## A. M. Harkey v. The State.

### No. 6358.   Decided October 5, 1921.

### Rehearing denied November 2, 1921.

#### 1.—Mingling Poison—Coffee Grounds—Strychnine.

Where, upon trial, under Article 1077, Penal Code, the facts showed that it was the custom of the family to use the coffee grounds left from breakfast in preparing coffee for the noon meal, and that afterwards strychnine was mingled in same by defendant, the offense was complete under said article.

#### 2.—Same—Food—Statutes Construed—Definition of Offense.

Under Article 1077, Penal Code, supra, the term "food" includes every article used for food or drink, by man, and in the instant case it is held that coffee grounds left in the coffee pot to be used afterwards in preparing coffee for another meal, is food.

#### 3.—Same—Voluntary Confession—Requested Charge.

Where, upon trial of mingling poison with food, etc., the defendant's confessions were introduced in evidence, over defendant's objection, the most the defendant might have demanded, under the facts of the instant case, was that the jury be called upon to determine whether the confession was voluntary, and in the absence of any such request, there was no reversible error.

#### 4.—Same—Confession—Corpus Delicti—Sufficiency of Evidence.

Where, upon trial of mingling poison with food, the *corpus delicti* was established, by proof, independent of defendant's confession, which was also in evidence, this satisfied the law demanding proof of the *corpus delicti* Following Gallegos v. State, 49 Texas Crim. Rep., 115, and other cases.

#### 5.—Same—Continuance—Confession.

Upon trial of mingling poison with food with intent to injure, defendant claimed a continuance on account of the absence of two witnesses as to defendant's mental incapacity to make an extrajudicial confession, but the

record showed that no such mental disorder existed at the time of such confession, there was no error in overruling the motion for continuance. Following Wooten v. State, 51 Texas Crim. Rep., 428, and other cases.

### 6.—Same—Rehearing—Mingling Poison—Food—Statutes Construed.

Where the intention of the law is that the mingling of poison with food with intent to kill or injure is an offense, the rule is that unless there be some substantial doubt as to whether the article with which the poison is mingled be food, drink, or medicine, the question will not be one of great weight; besides, Article 699, Vernon's C. C., provides that the term "food," as used in our pure food laws, shall include all articles used for food, etc.

### 7.—Same—Recantation—Evidence—Statutes Construed.

Where defendant confessed that after placing the poison in the coffee pot, he recanted and sought to remove same, but its presence had been discovered and he was prevented; held, that the offense was complete; there being no qualifying clause in said Article 1077, by which it is provided that if the poison be discovered and removed, etc., that there could be no guilt.

Appeal from the District Court of McCulloch. Tried below before the Honorable J. O. Woodward.

Appeal from a conviction of mingling poison with food with intent to injure; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Flack & Flack,* and *J. E. Shropshire* and *Sam McCollum,* for appellant.—Cited cases in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Appellant is convicted of a felony; his punishment fixed at confinement in the penitentiary for a period of six years.

The offense is defined in Article 1077 of the Penal Code thus: "If any person shall mingle or cause to be mingled any other noxious potion or substance with any drink, food or medicine, with intent to kill or injure any other person, . . . . he shall be punished, etc."

The act relied on is that appellant put strychnine in a coffee-pot containing coffee-grounds with the intent to injure one, Coalson. The facts show that the appellant was the husband of a daughter of J. N. Coalson; that with his wife and baby he resided at the home of J. N. Coalson and wife; and that it was the custom of all members of the family to drink coffee at breakfast, but that at the noon meal J. N. Coalson alone had the habit of doing so. On the morning of the offense, breakfast was prepared by the wife of J. N. Coalson, coffee was made and several members of the family partook of it, all of the fluid being drained out of the pot and the grounds left therein pursuant to a custom known to the appellant of using them in the preparation of coffee for the use of J. N. Coalson at the noon meal. Before

the noon meal was prepared, the poison was placed in the form of powder or crystals in the coffee-pot and became mixed with the coffee-grounds therein. While preparing the noon meal, Mrs. Coalson observed the substance and by reason thereof did not use the grounds nor the coffee-pot but prepared coffee in another vessel. The contents of the coffee-pot was analyzed and found to contain strychnine in poisonous quantity.

Appellant confessed that he had put the poison into the coffee-pot with the intent to kill J. N. Coalson.

Appellant testified as a witness and admitted that he made the confession but claimed that he did not speak the truth; that in fact, he did not commit the crime but that he was induced to make the confession by his desire to be re-united with his wife and child and his desire to relieve the anxiety of mind of J. N. Coalson who, at the time the confession was made, was in a very low state of health and was melancholy by reason of the occurrence and the fact that suspicion was directed against his wife. Evidence negativing an inducement or promise made to the appellant to secure the confession was introduced.

Appellant also testified that after the poisoning act described and before the noon hour, he recanted and sought to remove the poison but its presence was discovered by Mrs. Coalson while he was seeking an opportunity to carry his purpose into effect.

The theory is advanced that the verdict and judgment are unsupported by the evidence for the reason that the coffee-grounds with which the poison was mingled was neither food nor drink.

"The coffee bean is generally used in the preparation of a table beverage called 'coffee,' made by using the parched and ground coffee beans in preparing an infusion with boiling water." (Century Dictionary).

The question whether the coffee-grounds in question can be classified as food or drink, within the meaning of the statute, is vital. The courts have considered the meaning of these terms as used in pure-food statutes and other police regulations. See Cyc. of Law & Proc. vol. 19, p. 1085; Words and Phrases, 2nd Series, p. 591; Commonwealth v. Pflaum, 236 Pa. 294; Jewett v. Smail, 105 N. W. Rep. 738; Armour v. State Dairy Commission, 123 N. W. Rep. 580; 25 L. R. A. (N. S.) 616. These decisions declare, in substance, that the term "food" includes every article used for food or drink by man.

"Any article used as food or drink by man, whether simple, mixed, or compound, including food adjuncts, such as condiments, spices, etc." (Webster's New International Dictionary, 844.)

In the instant case, the testimony is affirmative and undisputed that it was the custom in the Coalson family to use the grounds left from breakfast in preparing coffee for the noon meal. Other testimony was introduced to the effect that there remains in coffee-grounds after once used food value. The quantity of ground coffee compared with

the water used would bear upon the strength of the grounds remaining. The custom of using the grounds a second time implies that they were adapted to the purpose. On the particular occasion, they were left in the coffee-pot preliminary to their use in the preparation of the the substance in the coffee-pot with which the poison was mixed was noon meal, pursuant to custom. Upon the facts before us, we think within the statute.

It is claimed that appellant's confession was not voluntary and that it should have been excluded. In his testimony he claimed that it was false and was induced by the promises and conduct of the Reverend Banks. Banks and appellant were members of the same church and the same lodge and attended the church conference together. At the time a divorce proceeding was pending, and Mr. Coalson was in a very low state of health. Appellant wanted the divorce suit abandoned and his wife and baby restored to him and a reconciliation with Mr. Coalson, and confided his desires to Banks. Appellant also testified that his confession was induced by a desire to restore the health of Coalson, to counteract the suspicion against Mrs. Coalson and effect the restoration of his wife and baby; that Banks told him his confession would result in his re-union with his wife and baby and that from his various conversations with Banks he felt confident that he had the assurance of Banks that all these results would follow the confession.

Banks said that appellant discussed his troubles, namely: his separation from his wife and baby and his estrangement with his father-in-law and the suspicion resting upon his mother-in-law, the low state of health of Mr. Coalson and asked the assistance of Banks, who replied that he would pray over the matter and that if he thought the appellant innocent he would help him in any way within his power; that subsequently he told appellant that he had prayed over the matter and decided he was guilty; that appellant said: "I done that," and said a knowledge of it would be a great relief to Mr. Coalson, who was in a dying condition; that the appellant expressed a desire to confess and that a meeting was arranged by Banks in which the confession was made in the presence of Coalson and others; and appellant afterwards expressed relief in getting the matter off his mind. Banks disclaimed ever promising to help in any way in court or to intercede in trying to get appellant's wife and baby back and declared that he offered no inducement to make the confession.

The confession was not evidence unless voluntary. Womack v. State, 16 Texas Crim. App., 188; Branch's Ann. Texas Penal Code, Sec. 66; Underhill's Crim. Evidence, Sec. 126. Whether appellant's testimony, standing alone, would have been sufficient to discredit the voluntary character of the confession is open to question. Rice v. State, 22 Texas Crim. App., 655; Branch's Ann. Tex. Penal Code, page 41. If, however, it be conceded that it was sufficient to produce this result, the denial of its truth by the witness Banks produces a conflict of evidence as to the existence of facts, and conceding the truth of Banks' testi-

mony., appellant's confession was not induced by any promise. The solution of this conflict, under the practice prevailing in this state, was for the jury. The most that appellant might have demanded was that the jury be called upon to determine whether the confession was voluntary and to reject it if they did not believe it to be so. Johnson v. State, 49 Texas Crim. Rep., 314; Underhill's Crim. Evidence, Sec. 126, note 16; Kennon v. State, 46 Texas Crim. Rep., 349; Corpus Juris, Vol. 16, p. 1003, note 32. Considering the record as it is made and in view of the conflict of evidence, the court could not have been warranted in withholding the confession from the jury. No request was made to have the jury determine its character.

While the *corpus delicti* may not be proved by the extrajudicial confession alone, such confession may be used to aid in the proof. Jackson v. State, 29 Texas Crim. App., 464; Kugadt v. State, 38 Texas Crim. Rep., 681; Gallegos v. State, 49 Texas Crim. Rep., 115; Lott v. State, 60 Texas Crim. Rep., 163; Branch's Ann. Tex. Penal Code, page 1049. In the instant case, the *corpus delicti* was established by proof independent of the confession. Aside from the confession, the evidence warrants the conclusion that the poison was mixed with the coffee-grounds with criminal intent. This satisfied the law demanding proof of the *corpus delicti*. The appellant's confession was available to identify him as the criminal agent. Sullivan v. State, 40 Texas Crim. Rep. 639; Gallegos v. State, 49 Texas Crim. Rep., 115; Corpus Juris, Vol. 16, page 1003; Chapman v. Commonwealth, 112 S. W. Rep., 567; Wharton's Crim. Evidence, 10th Edition, Sec. 633.

The facts supporting the inference that crime was committed, that is, that strychnine was put in the coffee-grounds with intent to kill or injure, being uncontroverted and not dependent upon the confession, we are of the opinion that the court did not commit error warranting a reversal in refusing to instruct the jury "that the confession could not be taken into consideration in determining that the crime was committed." Lott v. State, 60 Texas Crim. Rep., 167; Southern v. State, 60 Texas Crim. Rep., 579.

A continuance was sought because of the absence of two physicians who, according to the averments, would have testified that during the spring and fall of 1918 appellant "was suffering with a nervous disease which has affected his mind and mental capacity to such an extent as to render him wholly incapable of making an extrajudicial confession." The confession proved was made in September, 1919, the record revealing no continuance of the disorder or its existence at any time subsequent to the fall of 1918, nor that it prevailed at the time the confession was made, the action of the court complained of does not require or justify a reversal of the judgment. Wooten v. State, 51 Texas Crim. Rep., 428; Leache v. State, 22 Texas Crim. App., 279; Roberts v. State, 89 Texas Crim. Rep., 454, 231 S. W. Rep., 760.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

November 2, 1921.

LATTIMORE, JUDGE.—Appellant insists in his motion for rehearing that we erred in holding coffee-grounds to be food within the meaning of Article 1077, Vernon's P. C. Commonwealth v. Caldwell, 76 N. E. 955, a Massachusetts case, is cited as authority for the contention. We have examined this case and do not agree with the conclusion reached therein in regard to this matter, which is that tea and coffee are not provisions, within the comprehension of a statute which forbids peddling provisions, etc., without license. No analysis worth mentioning appears in the opinion in that case, which seems to be decided on the authority of Com. v. Lutton, 157 Mass. 392, and Com. v. Reid, 175 Mass. 325. Neither case is authority for the holding in the Caldwell case. In the Lutton case the court merely decides that oleomargarine and butterine *are* provisions, and in the Reid case, that ice is *not* a provision.

In a charge such as that under consideration the gravamen of the offense is the intent of the accused to take human life by the use of poison, and while the law-makers have seen fit to make such use criminal when it consists in mingling the poison with food, drink or medicine, it appears to us unless there be some substantial doubt as to whether the article with which the poison was mingled be food, drink or medicine, the question would be of no great weight.

In addition to the authorities cited in our original opinion supporting the proposition that coffee or coffee-grounds are entitled to be considered as food, we call attention to Article 699, Vernon's P. C., wherein it is stated that the term "food," as used in our pure food laws, shall include all articles used for food, drink, confectionery or condiment, by man. We see no good reason for holding that Smith may be punished for selling adulterated food, to-wit: coffee,—under the pure food laws, and that Jones can not be convicted under another of our laws for trying to take life by mingling poison with a food, to-wit: coffee, when the only very dubious reason which can be assigned for the distinction is that coffee is a food under one law and not a food under the other.

We are in accord with State v. Ohmer, 34 Mo. App., 115, which holds tobacco not to be a food; and not in disagreement with Botelor v. Washington, 3 Fed. 962, which holds rye chops to be food for animals, but not of the human species. We also think it too restrictive to require that what is meant by the term "food" be some article in a then condition for immediate human consumption without further process.

Our opinion is questioned for its statement that appellant testified that after placing the poison in the coffee-pot he recanted and sought to remove same but its presence had been discovered and he was prevented. This statement appeared in appellant's confession and we

should have so stated, but the inadvertence was of no effect upon the conclusions reached.

Appellant also contends that if his confession be taken to establish that he put the poison in the coffee-pot, it must also be taken to establish that before said poison was actually taken by anyone, he changed his mind and went back to get the poison out of said pot but was prevented by same having been discovered and removed by another person, and further, that he can not be convicted upon proof of a mere intent to commit the offense in question. The question was one of fact. If appellant put the poison in food with intent to kill, the express terms of Article 1077 were met. If he did not it was a question for the jury to find under the facts. This contention is not akin to a voluntary return of recently stolen property, or the removal of the load from a gun which was prepared for the purpose of committing murder, or the removal of a death trap prepared for a victim before any injury. There is no qualifying clause in Article 1077, *supra*, by which it is provided that if the poison be discovered and removed by some one else, or by the accused or his victim before the consummation of the intended crime, that there should be no guilt.

Being unable to agree with the contentions of appellant his motion for rehearing will be overruled.

*Overruled.*