# JANUARY, 1925.

## T. W. DAVIS v. THE STATE.

No. 8547. Delivered Jan. 28, 1925.

Rehearing denied Oct. 7, 1925.

### 1.—Accepting Bribe—Indictment—Held Sufficient.

Where the offense of accepting a bribe is charged, it is not necessary to allege that the person who gave the bribe to an officer, who accepted same, had committed an offense for which he could bribe an officer not to arrest him. To charge that the officer accepted money in consideration of an agreement that the officer would not arrest nor cause to be prosecuted the bribe giver is held sufficient. Following Shepherd v. State, 153 S. W., 628 and numerous other cases cited in opinion.

2.—Same—Construction of Statute—Art. 44, C. C. P.

Under Art. 44 of our C. C. P. where a person informs a sheriff .that he is engaged in a violation of the law, and offers to pay such officer money for immunity from arrest and prosecution, and the sheriff agrees to˙ accept the money and not arrest or prosecute such person, this offense is complete. See Mosely v. State, 25 Tex. Crim. App. 515.

3.—Same—Extrajudicial Confession—Corroboration Necessary.

To meet the requirements of the law touching the corroboration of an extrajudicial confession, it is not essential that the corroborating facts of themselves be conclusive. A comprehensive and accurate statement of the law is found in the opinion of Presiding Judge Hurt in the case of Kugadt v. State, 38 Tex. Crim. Rep., 692. In the instant case the extrajudicial confession of appellant was amply corroborated by numerous witness, and corroborative circumstances adequate to support the conviction.

ON REHEARING.

4.—Same—Charge of Court—On Extrajudicial Confession—Properly Refused.

Where the record discloses evidence of many circumstances, which shed light on appellant's apparent interest in, and desire to protect parties engaged in the illicit liquor traffic in his county, and are in addition to his confession, the trial court did not err in refusing to charge the jury that a conviction could not be had on the extrajudicial confession alone. Following Aven v. State, 253 S. W., 521.

5.—Same—Corpus Delicti—Sufficiently Shown—Aliunde Confession.

Where the evidence, aliunde appellants confession showed that for many months and possibly several years appellant was permitting certain persons to carry on illicit liquor traffic while he was sheriff, that he refused to prosecute the offenders or prevent the traffic, under the rule laid down in the Kugadt case, supra, the corpus delicti was clearly established, and the motion for rehearing is overruled.

Appeal from the District Court of Johnson County. Tried below before the Hon. Irwin T. Ward, Judge.

Appeal from a conviction for accepting a bribe, penalty four years in the state penitentiary.

The opinion states the case.

*D. W. O'Dell, J. K. Russell* and *W. E. Meyers,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is accepting a bribe; punishment fixed at confinement in the penitenary for a period of four years.

Omitting the formal parts, the indictment contains the following averments:

"***the said T. W. Davis did then and there unlawfully, wilfully and corruptly and in violation of his official duty, accept from W. B. Pruitt, a bribe, in this, the said T. W. Davis as Sheriff aforesaid did

then and there unlawfully, wilfully and corruptly accept from said W. B. Pruitt the sum of One Hundred Dollars in money, said bribe being then and there offered by the said W. B. Pruitt and accepted by the said T. W. Davis upon the agreement and with the understanding between them that the said T. W. Davis, in violation of his official duty, would not arrest, report and file complaints against W. B. Pruitt, J. C. Pruitt, J. O. Pruitt, Sterling Pruitt and one Lloyd, whose other name is to the Grand Jurors unknown, and either of them for unlawfully manufacturing, selling, transporting and possessing for the purpose of sale, spirituous, vinous and malt liquors, and medicated bitters capable of producing intoxication, and would not arrest and cause the said W. B. Pruitt, J. C. Pruitt, J. O. Pruitt, Sterling Pruitt, and said Lloyd to be arrested, complaints filed against them and either of them, and would use his official position as Sheriff of said County to keep the said W. B. Pruitt, J. C. Pruitt, J. O. Pruitt and Sterling Pruitt, and the said Lloyd and either of them from being arrested and prosecuted for unlawfully manufacturing and being interested in unlawfully manufacturing, selling, transporting and possessing for the purpose of sale, spirituous, vinous and malt liquors and medicated bitters capable of producing intoxication, against the peace and dignity of the State.''

The sufficiency of the indictment is assailed upon several grounds, namely, (a) because of the absence of an averment that the parties named had committed the offenses named or had intended to do so; (b) because of the absence of an averment that a warrant of arrest had been issued or that the appellant knew or had been informed by a credible person that the parties named were violating the law in the particulars mentioned; (c) because it was not the duty of the sheriff to make the arrest or to file complaints.

Appellant cites the case of Morawietz v. State, 80 S. W. Rep., 997. In that case, a justice of the peace was charged with accepting a bribe to refrain from making an arrest. The court refused to sustain the conviction because under the facts averred, it was not the duty of the justice of the peace to make the arrest. The duties of a sheriff as a peace officer are broader than those of a justice of the peace. The powers and duties of a peace officer, such as a sheriff, with reference to making arrests, are much broader than those of a magistrate such as a justice of the peace. See C. C. P., Arts. 41, 43 and 44. Article 44, supra, reads as follows:

''It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose, he shall use all lawful means. He shall, in every case where he is authorized by the provisions of this Code, interfere without warrant to 'prevent or suppress crime. He shall execute all lawful process issued to him by any magistrate or court. He shall give notice to some magistrate of all offenses committed within his jurisdiction, where he has good reason to believe

there has been a violation of the penal law. He shall arrest offenders without warrant in every case where he is authorized by law, in order that they may be taken before the proper magistrate or court and be brought to punishment.''

Articles 189 and 190 of the Penal Code upon the subject of bribery read thus:

''If any person shall bribe, or offer to bribe, a sheriff or any other peace officer to do any other act not heretofore enumerated, contrary to his duty as an officer, or to omit to do any duty incumbent upon him as an officer, he shall be punished by confinement in the penitentiary for not less than two nor more than five years.''

''If any sheriff or other executive or peace officer shall accept, or agree to accept, a bribe offered, as mentioned in articles 187, 188 and 189, he shall receive the same punishment as is affixed to the offense of giving or offering a bribe in the particular case specified.''

In the case of Minter v. State, 70 Texas Crim. Rep. 634, the indictment containing the same alleged vices as the present case and against which similar criticisms were made, was considered, and the sufficiency of the indictment was upheld. There was a dissenting opinion expressing the view that the indictment was bad but particularized the point that a reversal was demanded because the State's witnesses were accomplices. No argument or reason is given, nor are any authorities cited in the dissenting opinion in support of the view that the indictment was bad. The majority opinion displays much research and contains many citations of authority in support of the conclusion reached that the indictment was good. In that case, it was the person offering the bribe who was convicted; in the present case it is the one who agreed to receive or received a bribe. The principles of law, however, governing the essential averments and the elements of the crime are conceived to be the same. The conclusion stated is in these words:

''***the indictment herein is not defective, in failing to charge, if it does, that appellant had committed an offense for which he could bribe an officer not to arrest him.''

In support of this, many authorities are cited among which are Shepherd v. State, 153 S. W. Rep., 628; Jackson v. State, 43 Texas Rep., 421; Scoggins v. State, 18 Texas Crim. App. 298; Ruffin v. State, 36 Texas Crim. Rep. 565; Smalley v. State, 59 Texas Crim. Rep. 95; People v. Markham, 64 Cal. 157.

Adverting to Art. 44, C. C. P., quoted above, it occurs to the writer that the offense was complete when Pruitt proposed the bribe and the sheriff agreed to accept it. Pruitt's offer to make the bribe was an assertion that he was engaged in violations of the laws against the manufacture, sale and transportation of intoxicating liquors, and that he intended to engage in such enterprise, and was sufficient to inform the sheriff of these facts. Having such information, the law required, among other things, that the sheriff should give notice to some mag-

istrate that he had good reason to believe that there had been a viola-tion of the penal laws. It is the duty of the sheriff to interfere, without warrant, to prevent or suppress crime. The essence of his acceptance or his agreement to accept it was that he would close his eyes to the offenses; that he would refrain from taking any steps to suppress or prevent the crime. The principles stated by Judge Hurt in Moseley's case, 25 Texas Crim. App. 515, seem applicable, from which case we quote:

"It matters not whether the arrest and custody were legal or illegal, the said Gable was a prisoner in the custody of the defendant, a peace officer, and was permitted by the defendant to escape in consideration of money paid him to effect such escape. We are of the opinion that, in a prosecution for this offense, it was not permissible for the defendant to question the legality of his custody of the prisoner. Such an issue is irrelevant and immaterial. The moral abliquity of this offense is the same where the custody of the prisoner is illegal as where it is legal, and the injury to public justice is the same."

It seems a paradox to say that he might accept a bribe to remain ignorant of the commission of a specific offense and to refrain from acquiring identical knowledge of it, and then defend upon the ground of such ignorance or to impose upon the State the burden of showing a specific knowledge as a condition precedent for convicting him of accepting the bribe.

The appellant had been Sheriff of Somervell County since October, 1916. On August 30, 1923, he made a confession, which was in writing and which was introduced in evidence, from which it appears in substance that some time in the year 1921 he was told by W. B. Pruitt that he, in connection with others, was intending to engage in making whisky. On the second occasion, some three weeks later, W. B. Pruitt again approached the appellant and asked how much he thought he ought to have out of the whisky. Appellant replied that he thought the whisky making ought to be stopped and that he ought not to have any of the proceeds. During the next month, however, W. B. Pruitt came to him a number of times and discussed the same subject. From the confession we quote:

"He (Pruitt) finally talked me into agreeing that I would accept money from the men who were making and selling whisky. Following this, the moonshiners and whisky sellers commenced giving me money in 'dribs.' At first I had no fixed amount that the men were to give me."

W. B. Pruitt and a man named Loyd approached the appellant and stated that they were going to be partners in making and selling whisky; that a good many others were also going to make whisky, and that they (Pruitt and Lord) thought appellant ought to have something out of it. Appellant told them that he did not want to make

any fixed price and for them to do what they thought was right. Pruitt and Lord said that they thought appellant ought to be paid about ten per cent, and appellant told them that this would be up to them. From the appellant's confession, we further quote:

"About November 1, 1922, Pruitt came to me and paid me about One Hundred Dollars in currency as he had agreed the month before, as above set out, and W. B. Pruitt has since October 1, 1922, made me something like seven or eight payments in all. About July 30, 1923, W. B. Pruitt and Lord came to me together, then left and each came back separately, when W. B. Pruitt paid me $24.00 and Lord paid me $72.00, which was the only money Lord ever paid me in person.

Between October, 1922, and May, 1923, I went to Pruitt some three or four times and tried to get him to let us call off the business but he refused, telling me that he would see that I got mine for as long as a barrel of whisky was made."

The witness Faulkner, on behalf of the State, testified that he had been a resident of Somervell County for many years and was acquainted with W. B. Pruitt, J. C. Pruitt, and J. O. Pruitt, but was not acquainted with Lord. W. B. Pruitt occupied the farm belonging to the brother of the witness which was in his care. The place contained fifty-three acres in cedar brakes, with a house on it, and four or five acres were in cultivation. There was also a two-story barn upon the premises. J. C. Pruitt had the barn rented. The witness, on visiting the barn in March, 1922, found articles therein which aroused his suspicion. He went to the appellant and suggested that the place be searched. The appellant, after consulting with the county attorney, said that a search-warrant would be necessary. The witness expressed his willingness to make the affidavit and was told that more than one witness was necessary. The witness procured other persons to visit the barn and later went to the appellant and the county attorney and made affidavit for the search-warrant. The party then went to the barn, appellant in the meanwhile talking to Carl Pruitt's wife. Before going to the barn they went to J. C. Pruitt and he accompanied them. They found in the lot two empty barrels and a big gasoline tank. They found in the barn five barrels, another tank, and five or six empty cases of Karo syrup buckets. The barrels had scent which the witness had not before experienced. One of the gasoline tanks, described as having a capacity of 50 or 60 gallons, had the appearance of having been burned on the outside, or that a fire had been built around it. The tank appeared to have been made of copper or galvanized iron," and had a funnel top to it and a neck-like at the top and had a faucet down at the bottom." "There were some little pipes laying there on the floor. Some of the pipes were small pipes and some were as large as ¾ of an inch." They appeared to have been made out of copper. There was also a gasoline burner about eighteen inches high. Immediately after the examination, the

witness asked the appellant what he was going to do about it and was told that he "couldn't do anything because it wasn't in action." The witness then remarked that Somervell County was too small to make whisky in and most especially on that place; that the outfit must be taken off the place. Appellant made no reply. The witness told Carl Pruitt that he must move the outfit and that he must also leave the premises. This conversation took place in the presence of the appellant. A few days later, the witness was in Glen Rose and was called to the court house and taken to the county attorney's office by the appellant. The county attorney and the justice of the peace were there. Appellant told the witness Faulkner that he had been telling people that there was a whisky-making still there and that Carl Pruitt wanted him to swear to it. Neither the justice of the peace nor the county attorney said anything. The witness said that he had never seen a still, did not know one, and did not intend to swear that the property was a still. The transaction mentioned took place in February, 1922.

Pruitt Merrill, a witness for the State, testified to facts showing that J. C. Pruitt and J. O. Pruitt had manufactured whisky in Somervell County in November, 1922; also in August, 1923, at which time J. O. Pruitt was present. J. O. Pruitt was a son of W. B. Pruitt.

The witness had also seen Sterling Pruitt, another son of W. B. Pruitt, at the still. The witness described the locality and the time, and also said that in making whisky they used fifty pounds of sugar and a barrel of mash.

The witness Wright testified that he was a "freighter" and that he had hauled a distillery consisting of boilers and about 23 or 24 barrels. The boiler was of about 125-gallon capacity. He also hauled a small oil heater and a trough holding about 250 gallons. W. B. Pruitt and Lord were present. Pruitt helped to load and put the articles on the wagon, after which they were taken to Glen Rose by the witness. He delivered the stuff at the Bobo Place, about two and one-half miles from Glen Rose. This was done at night time.

It was shown by the witness Gibbs that W. B. Pruitt had bought a quantity of sugar; that on August 25, 1923, he bought three sacks containing 100 pounds each; that he had also bought sugar at other times. Another witness testified that J. O. Pruitt had bought in the aggregate of twenty sacks of sugar. Other witnesses testified that W. B. Pruitt bought a large quantity of sugar about the same time.

Appellant had never undertaken to file or initiate any prosecution against either W. B. Pruitt, J. C. Pruitt, J. O. Pruitt, Sterling Pruitt, or Lord.

The appellant insists and the State's Counsel concedes that the corpus delicti is not established, the position taken being that the confession is insufficient to prove the corpus delicti in that the requisite corroboration is lacking. The State cites Brady v. State. 22 S. W.,

Rep., 924; Johnson v. State, 150 S. W. Rep., 936; Hill v. State, 183 S. W., Rep., 1162; Aven v. State, 253 S. W., Rep., 521.

To the writer the evidence seems sufficient to establish the fact that the parties named in the indictment were engaged in the illicit manufacture and sale of intoxicating liquor in Somervell County and that the appellant had been informed of this fact:

To meet the requirements of the law touching the corroboration of an extrajudicial confession, it is not essential that the corroborating facts of themselves be conclusive. A comprehensive and accurate statement of the law is found in the opinion of Presiding Judge Hurt of this court in the case of Kugadt v. State, 38 Texas Crim. Rep., 692. The corpus delicti may be established by circumstantial evidence. In the present case, the confession definitely shows an agreement to accept the bribe and that the bribe money was received by the appellant. Pruitt, the alleged briber, was a citizen of Somervell County in which the offense was committed, which county is quite small; in fact, the smallest in the State. That Pruitt and the other persons named in the indictment did, for a long time, engage in the illicit manufacture and traffic of whisky is conclusively shown by evidence aside from the confession, and the circumstances, we think, are corroborative of the confession. Appellant's conduct was described by the witness Faulkner which, as detailed above, indicates an unwillingness to cooperate in molesting Pruitt, but rather a desire to throw obstacles in the way. Faulkner, by his words and conduct, pertinently indicated to the appellant his belief that Pruitt was an offender against the laws prohibiting the manufacture of whisky. Appellant was over-particular in demanding two witnesses to the search-warrant in order to search a barn. See Acts. of 36th Leg., 2nd Called Session, Chap. 78, Sec. 35.

The continued quiescence of the appellant and the absence of any activities on his part to prevent the commission of the offense which Pruitt was committing and which he had informed appellant would be committed, are additional corroborative circumstances which, together with the others mentioned and the confession, are deemed adequate to support the conviction.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant has renewed his complaint of the failure of the learned trial judge to tell the jury in his charge that a conviction could not be had on the extrajudicial confession alone. Had the State relied solely on such confession, the matter might be more material, but examination of the record discloses evidence of many circumstances, some of which are referred to in our original opinion, which shed light on appellant's apparent interest

in and desire to protect parties engaged in the illicit liquor traffic in his county and are in addition to his confession. In the recent case of Aven v. State, 253 S. W. Rep., 521, the failure to give a charge such as the one under discussion, was upheld, and the subject analyzed and discussed at length. We do not think it necessary to do more than cite the Aven case on this point.

On the sufficiency of proof of the corpus delicti, appellant made a full and complete admission of the fact that for many months and possibly several years he was permitting certain parties to carry on the illicit traffic in liquor while he was sheriff. That said parties were engaged in said traffic was proven, also that this fact was directly brought to appellant's attention, and that he practically refused to act in any official way to punish the offenders or prevent the traffic, but on the contrary tried to intimidate and coerce the private citizens who were trying to stop such traffic, appears in the record. We adhere to the rule laid down in Kugadt v. State, 38 Texas Crim. Rep., 692. J. C. Pruitt was one of the parties named in the indictment as entitled to appellant's protection under the alleged agreement. The record amply shows appellant to have given him such protection.

The complaint of the charge is without merit. The indictment set out the matter of the agreement between appellant and W. B. Pruitt, and it was sufficient, in applying the law to the facts, to tell the jury that if they believed beyond a reasonable doubt that appellant as sheriff, etc., accepted from W. B. Pruitt a bribe ''as alleged in the indictment'' etc.

Believing no error was committed in our anouncement of the law in the original opinion, the motion for rehearing will be overruled.

*Overruled.*