Joe Edward SMITH, Appellant,

v.

The STATE OF TEXAS, Appellee.

No. 21083.

United States Court of Appeals
Fifth Circuit.

March 30, 1964.

Rehearing Denied May 11, 1964.

James J. Hippard, Houston, Tex., for appellant.

Samuel H. Robertson, Jr., Houston, Tex., for appellee.

Before HUTCHESON and BELL, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

This case is now in the throes of the piecemeal, post-conviction, collateral litigation of issues which has become the established practice where there is a conviction carrying a substantial penalty. Four and a half years after the date of the offense, the case is before us on appeal from a judgment of a federal district court denying a second petition for writ of *habeas corpus* after it had already run the gamut of litigation on the merits in the state trial and appellate courts, Smith v. State, 171 Tex.Cr.R. 313, 350 S.W.2d 344 (1961), cert. den. 368 U.S. 883, 82 S.Ct. 126, 7 L.Ed.2d 83, and on a federal court petition for writ of *habeas corpus* attacking the validity of the defendant's extrajudicial statement. Smith v. Heard, S.D.Tex., 214 F.Supp. 909 (1962), affirmed 315 F.2d 692 (5 Cir. 1963), cert. den. 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed. 2d 113.

The appellant was assessed the death penalty in the Criminal District Court of Harris County, Texas, for murder with malice aforethought. This second petition for writ of *habeas corpus* challenges the conviction on the ground that the prosecution failed to offer evidence proving all of the elements of the offense and fulfilling the requirements of Texas law, and that his sentence was therefore in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States under the rule announced in Thompson v. City of Louisville, 362 U. S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, 80 A.L.R.2d 1355 (1960), and Garner v. Lou-

isiana, 368 U.S. 157, 82 S.Ct. 248, 7 L. Ed.2d 207 (1961).

Appellant says that this question has never been considered prior to this proceeding. That statement is incorrect. The question of the sufficiency of the evidence, which necessarily includes that of whether there was any evidence, was passed on by the trial court in the hearing on the motion for new trial in the murder case. While the matter was not discussed in the opinion of the Court of Criminal Appeals of Texas, the question of whether a conviction is supported by the evidence is one which is always weighed by that Court, regardless of whether it is briefed and argued and of whether the opinion mentions it. Kelly v. State, 95 Tex.Cr.R. 138, 252 S.W. 1065 (1923); Singleton v. State, 158 Tex.Cr. R. 71, 253 S.W.2d 441 (1952); Corley v. State, 158 Tex.Cr.R. 207, 254 S.W.2d 394 (1953); 5 Tex.Jur.2d, p. 212. In the Kelly case, supra, the Court of Criminal Appeals said: " * * * We are required by our statutes to read the statement of facts in every case, and if we do not believe the facts to support the verdict, it is our duty to reverse the case. * * " Vol. 1, Sec. 262, p. 491, Wharton's Criminal Evidence, 10th Ed., says that " * * the Texas Court of Criminal Appeals always considers the entire record, weighing, analyzing and thoroughly digesting all the evidence before applying the law to the case in hand."

The record of the trial in the state court indicates that the accused was there represented by experienced counsel, who diligently prepared the case for trial, and that his defense was ably and vigorously advocated in the trial court and on appeal. One of those two counsel appeared as attorney of record on the first *habeas corpus* petition in the federal court. No reason is shown in any portion of the record why the question here argued was not presented in that first *habeas corpus* proceeding.

Both the petitions for writ of *habeas corpus* in the federal court were heard by the same district judge. His

written opinion in the present case shows that he denied the writ after hearing oral arguments and giving thorough, deliberate consideration to the entire evidence admitted in the trial of the murder case. Smith v. State, S.D.Tex., 225 F.Supp. 150. That opinion states that, "This Court carefully reviewed the entire trial court record before making its determination of petitioner's first petition for writ of *habeas corpus* and has now done so a second time in connection with this his second petition." We have studied closely the full record before us, including the lengthy statement of facts in the trial of the murder case and the trial and appellate transcripts from the state courts, and have concluded that the able trial judge correctly decided this case. We are in agreement with his carefully considered opinion; and, under ordinary circumstances, we would be content to stop with approving and adopting it. The nature of the penalty involved, however, has led us to consider a ground earnestly presented in oral argument here as additional support for the appellant's contention that there was no evidence to establish his guilt, even though it appears not to have been urged in the court below.

The basis of appellant's theory in the court below that the evidence in the murder case did not meet the standards of proof required to sustain a conviction under the law of Texas is accurately described in the following statement taken from Judge Noel's opinion: " * * * This ground encompasses such contentions by petitioner as the failure in the absence of direct evidence to introduce circumstantial evidence excluding every other reasonable hypothesis except petitioner's guilt, failure to prove each of the essential elements of the offense beyond a reasonable doubt, the obtaining of the conviction by basing one inference upon another inference, and conviction without the introduction of sufficient quantitative evidence to justify rationally a finding as to every element of the crime charged. * * * " 225 F.Supp. at p. 152. While appellant has not abandoned those contentions, the main thrust of his argument here is the added ground that the prosecution failed to meet its burden of establishing the *corpus delicti.*

The fundamental rules regarding the standard and *quantum* of evidence required to prove the *corpus delicti* in cases where there is an extrajudicial statement or confession by the accused have been long established and consistently followed in Texas since Kugadt v. State, 38 Tex. Cr.R. 681, 44 S.W. 989 (1899), opinion by Presiding Judge Hurt. The Kugadt case has been frequently cited and quoted with approval by the Court of Criminal Appeals down through the years and as late as Kimble v. State, 172 Tex.Cr.R. 31, 353 S.W.2d 442 (1962). Comparatively recent decisions have referred to it as "the leading case on this proposition." Black v. State, 137 Tex.Cr.R. 173, 128 S.W.2d 406, 413 (1939); Kincaid v. State, 131 Tex.Cr.R. 101, 97 S.W.2d 175, 177 (1936); Whitaker v. State, 160 Tex. Cr.R. 271, 268 S.W.2d 172 (1954).

The following principles applicable to this case are the firmly established law in Texas:

"The general doctrine is that extrajudicial confessions, standing alone, are not sufficient proof of the corpus delicti." Kugadt v. State, supra, 44 S.W. at p. 996; Black v. State, supra; Alexander v. State, 151 Tex.Cr.R. 235, 207 S.W. 2d 881 (1948); Annotations in 127 A.L. R. 1130 and 45 A.L.R.2d 1316.

"The corpus delicti may be proved by circumstances as well as by direct evidence." Watson v. State, 154 Tex.Cr.R. 438, 227 S.W.2d 559, 562 (1950); Kugadt v. State, supra; Whitaker v. State, supra; Saulter v. State, 151 Tex.Cr.R. 550, 209 S.W.2d 184 (1948).

"The confession may be used in connection with other facts and circumstances in establishing the corpus delicti." Rodgers v. State, 164 Tex.Cr.R. 375, 298 S.W.2d 827, 828 (1957); Kugadt v. State, supra; Black v. State, supra; Alexander v. State, supra; Whitaker v. State, supra; Harkey v. State, 90 Tex.

Cr.R. 212, 234 S.W. 221, 17 A.L.R. 1276 (1921); Bussell v. State, 141 Tex.Cr.R. 268, 148 S.W.2d 413 (1948); Benjamin v. State, 160 Tex.Cr.R. 624, 274 S.W.2d 402 (1954).

■ "And the confession may render sufficient circumstantial evidence that would be insufficient without it." Pollan v. State, 157 Tex.Cr.R. 178, 247 S.W.2d 889, 891 (1952); Watson v. State, supra; Kugadt v. State, supra; Kincaid v. State, supra; Black v. State, supra; Davis v. State, 101 Tex.Cr.R. 243, 275 S.W. 1060 (1925).

" 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a reasonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused. "Full proof of the body of the crime, the corpus delicti, independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient." ' " Kugadt v. State, supra, 44 S. W. at p. 996; Kincaid v. State, supra; Alexander v. State, supra; Whitaker v. State, supra; Black v. State, supra; Lott v. State, 60 Tex.Cr.R. 162, 131 S.W. 553 (1910).

■ The *corpus delicti* of a murder case in Texas comprises three elements: "(1) That the body of the deceased was found and identified, (2) that the death of the deceased was caused by the criminal act or agency of another, and (3) that the accused is connected with that criminal act or agency." Black v. State, supra, 128 S.W.2d at p. 409; Kugadt v. State, supra.

■ Application of those principles to the evidence admitted in the trial of the murder case convinces us that the prosecution fully met the standards necessary to establish the *corpus delicti* in this case. Our opinion would be the same regardless of whether the test to be applied under Thompson v. City of Louisville, supra, and Garner v. Louisiana, supra, is, as we understand it, whether there was *any* competent evidence to establish each of the necessary elements, or, as the appellant appeared at times to contend in his argument here, whether the evidence was *sufficient* to show each of them.

The appellant does not question the fact that the first two elements of the *corpus delicti* were proved beyond any doubt by evidence *aliunde* his extrajudicial statement. The body of the deceased was found, and it was positively identified by witnesses who knew him. In regard to the second element, the facts and circumstances independent of the statement more than met the burden of proving that the death of the deceased was due to foul play rather than to natural causes, and that the injuries which produced death were not self inflicted. No better description of the only conclusion possible to be drawn in this connection from those circumstances can be found than that contained in the appellant's motion for rehearing in the Court of Criminal Appeals, where it was said: "It is true that a brutal murder has been committed. It is true that said murder is inexcusable * * *." The appellant's contention here is directed entirely at the third element. He claims that there was no evidence of probative force to show that he had any connection with the criminal act or agency which caused the death of the Bodenheimer boy, because: (a) the state did not prove its theory that the killing occurred by mistake or accident while the appellant and his co-principals were engaged in the act of preparing for or of committing sodomy on the deceased, and (b) there was no proof other than the confession to connect the appellant with the transaction resulting in the murder.

The following rules apply in testing this contention:

■ 1. Once it has been established that an offense has been committed, the

defendant's connection with it may be proved by his extrajudicial statement alone. Kugadt v. State, supra; Lott v. State, supra; Harkey v. State, supra; Black v. State, supra; Bussell v. State, supra; Alexander v. State, supra; Watson v. State, supra; Hernandez v. State, 165 Tex.Cr.R. 329, 307 S.W.2d 88 (1957). Those cases are consistent with the statement in Smith v. United States, 348 U.S. 147, 153–154, 75 S.Ct. 194, 198, 99 L.Ed. 192, that the generally accepted rule in capital cases is: " * * * In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called *corpus delicti*. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. * * " In the Harkey case, the Court of Criminal Appeals said: " * * * Aside from the confession, the evidence warrants the conclusion that the poison was mixed with the coffee grounds with criminal intent. This satisfied the law demanding proof of the *corpus delicti*. The appellant's confession was available to identify him as the criminal agent. * * * "

■ 2. The state may rely upon circumstantial evidence to corroborate a defendant's confession both as to the fact of the murder itself and as to the manner and means used in accomplishing it. Kugadt v. State, supra; Lott v. State, supra; Black v. State, supra; Whitaker v. State, supra.

Kugadt, Lott, Black and Whitaker were each convicted of murder, with Lott receiving a life sentence and the others getting the death penalty. The question in each of those cases was whether the State had met its burden of establishing the *corpus delicti* by proving the manner and means that produced death, and the defendant's criminal agency therein. Lott and Black each made an extrajudicial confession admitting that the death of the deceased in his case was accomplished in the manner charged by the State; but the corroboration on that issue consisted entirely of circumstantial

evidence. Kugadt's extrajudicial written statement said that the death was due to accidental means not under his control. The falsity of that exculpatory statement and the means of producing death were proved only by circumstantial evidence. In the Whitaker case, the indictment alleged that the murder was the result of asphyxiation from choking with a cord. The Court there said at p. 179 of 268 S.W.2d that it was "to be remembered that the state relied upon circumstantial evidence to prove the fact that appellant killed the deceased, as well as to prove the manner and means used in the killing," and that the defendant's statement to the officers of his connection with the transaction in which the murder happened "did not constitute an admission that he killed the deceased, nor that he used a cotton cord in doing so, or in fact that he inflicted any serious injuries upon her." In each of the four cases, there was no evidence other than the defendant's own statement to connect him with the fatal transaction at the actual time of the killing; and in the Kugadt and Whitaker cases, the proof as to the manner and means of death depended entirely on circumstantial evidence. Under conditions no stronger legally than those in the present case, the Court of Criminal Appeals affirmed the Kugadt, Lott, Black and Whitaker cases in the face of the contention in each one of them that the State had failed to prove the *corpus delicti* in the respects under discussion here.

■ The State's theory was that appellant and his co-principals, through mistake or accident, while preparing for and executing sodomy on the Bodenheimer boy, killed him by smothering and suffocation accomplished through one or more of the following means: choking and strangling him with their hands, covering his mouth and nose with their hands and arms, squeezing or pressing his chest, placing his body inside a refrigerator and closing the door, by some manner unknown to the grand jury. That theory was based in part on Articles 42 and 524, Vernon's Ann.Tex. Penal

Code. Article 524 makes sodomy a felony. Article 42 provides: "One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed." Under those statutes, the killing of the Bodenheimer boy under the circumstances claimed by the State was murder with malice under Articles 1256–1257b of the Texas Penal Code.

The appellant's written statement and most of the extrinsic incriminating facts and circumstances proved on the appellant's murder trial appear in an appendix to the opinion of the court below. 225 F. Supp., at 155–158. Reference to that appendix and to the summaries of the facts contained in the several prior opinions written by the Court of Criminal Appeals, by the United States District Court and by this Court enable us to dispose of the question here presented without a detailed review of the voluminous evidence.

The murder occurred in the City of Houston, Texas in a small, unoccupied "metal shack" which had previously been used as an office. It was located on an otherwise vacant lot known as "the dirt yard lot" because it had formerly been used as a place to pile dirt to use around residences. The deceased Bodenheimer boy was twelve years old. He left his home on his bicycle to go swimming on the summer afternoon of his death and did not return. After an all night search, his body was finally found in the little house on the dirt yard lot about 9:45 the next morning.

The appellant's written statement established that he and his several co-principals knocked the boy off his bicycle as he was riding on the street alongside the dirt yard lot, and forcibly carried him to the shack on the lot, where they stripped him of his clothes and each of them committed anal sodomy on him; that the child resisted and they used force "to keep him from hollering" as they dragged him from the street to the shack; that appellant was the third one

of the group to commit sodomy on the boy; that when he finished, he stepped outside the shack to wait while three others remained inside; that as he went out the door one of the three "was on the boy" committing anal sodomy; that within ten minutes the three who had remained inside "came out of the house running"; that one of the group told him later on that day that they had put the boy in the ice box; that the boy's bicycle was left at the shack.

That written statement was amply corroborated by independent evidence as to: (1) the presence, conduct and remarks of the appellant and his co-principals in the immediate vicinity of the dirt yard lot only a few minutes before the Bodenheimer child was taken to the shack; (2) the presence of the deceased at that time, though not in hearing distance of the appellant's remarks; (3) the physical facts surrounding the discovery of the boy's nude body in a cramped, sitting position in a pool of blood in the closed refrigerator, with his clothes on the floor of the shack and his bicycle outside; (4) the condition of his body with painful injuries showing that he had been choked and his left chest had been crushed, and that sodomy had been committed on him; (5) the findings on the clothes of some of the principals and on the privates of all of them indicating that they had been engaged in anal sodomy, with blood spots and hair taken from the pants of some of them justifying the conclusion that the sodomy was on the Bodenheimer boy; (6) the fact that the cause of death was asphyxiation from suffocation "due to pressure on the neck, and on the left chest."

When the independent facts and circumstances are considered in connection with the appellant's written statement, they fully justify the conclusion that the appellant and his co-principals committed anal sodomy on the Bodenheimer boy in the shack on the dirt yard lot; that while engaged in preparing for and committing such felonious acts, they applied brutal pressure to his throat and his left chest for the purpose of suppressing

screams or of subduing him, or both; that such pressure to the neck and left chest resulted in death by asphyxiation; that the body of the child, either lifeless or in a hopeless state, was placed in the ice box and the door was closed. Such evidence met the State's burden of establishing the manner and means of the killing and that the defendant was criminally connected therewith.

The appellant argues that the proof as to the connection between the sodomy and the suffocation depends entirely on the opinion testimony of the pathologist that the asphyxiation was due to suffocation "in association with sodomy." He does not question the competency of the testimony that the death was due to asphyxiation from suffocation, but says that the further statement that it was "in association with sodomy" has no probative force and cannot support the conviction. He bases this contention on the case of Garner et al. v. Louisiana, supra. In that case, various convictions of a number of defendants for disturbing the peace depended entirely on opinion testimony of the arresting officers that the defendants were committing a breach of the peace by merely sitting at public lunch counters, and of the restaurant manager that he "feared that some disturbance might occur" if the defendants remained seated at the counters. It was there held that the opinion testimony of the officers and the manager was wholly incompetent and without probative force. There was no other evidence that the defendants were committing such acts as "might foreseeably disturb or alarm the public." The competent evidence actually disproved that essential element of the offenses charged. The Supreme Court held under such circumstances that there was no evidence to support the convictions, and that they were therefore unconstitutional and void. The case at bar presents an entirely different situation because reliance on the opinion involved in the words, "in association with sodomy", is not necessary. The facts and circumstances hereinbefore outlined, proved by admittedly competent evidence, taken alone or in connection with the defendant's extrajudicial written statement, leave no doubt that the suffocation of the Bodenheimer child was connected with the preparation for or execution by appellant and his co-principals of the several acts of sodomy on him.

The appellant's conviction for murder is amply supported by competent evidence, and the judgment of the court below is affirmed.