**Marvln CLEWIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 37483.**

Court of Criminal Appeals of Texas.

Oct. 4, 1965.

Rehearing Denied Nov. 10, 1965.

As Amended on Denial of Second Motion for
Rehearing Jan. 5, 1966.

Certiorari Granted Oct. 10, 1966.
See 87 S.Ct. 104.

On Remand June 7, 1967.

Legg, Saxe & Baskin, by Reagan H. Legg, Midland, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder; the punishment, twenty-five years.

The state's evidence shows that on July 5, 1962, the skeleton of a human being—which was identified by dental bridge work as that of appellant's wife, who had been missing from her home since the latter part of January—was found in a shallow grave northwest of the city of Midland, off Farm Road 868. When found, the body had the wife's brassiere around the legs and a belt, identified as belonging to appellant, around the neck.

A written statement made by appellant to deputy sheriff Gene Howell, of Midland County, on July 17, 1962, after being duly warned, was introduced in evidence as state's exhibit #13. In the statement, appellant admitted that he choked his wife to death with a belt during the latter part of

January while the two were tussling and fighting in his truck parked on a dirt road out from Midland. He further admitted having placed her body in a hole which he dug with a shovel and covering it with sand. In his statement, appellant related that when he buried his wife the belt with which he choked her to death was still around her neck. He further stated that he "was angry and mad" when they were fighting and that he was "sure angry" when he was choking her.

Testimony was offered by the state that on a Saturday night in January, 1962, appellant had threatened to kill the deceased and had choked her.

Testifying as a witness in his own behalf, appellant denied having killed his wife and repudiated his written statement introduced in evidence by the state.

An issue was raised by appellant at the trial as to the voluntary nature of the written confession and its admissibility in evidence. Such issue was raised by what was termed a "MOTION TO EXCLUDE AND SUPPRESS STATE'S CONFESSIONS," which motion was heard by the court in the absence of the jury. After the motion had been by the court overruled, evidence was presented before the jury on the question of the voluntary nature of the confession and such issue was submitted to the jury in the court's charge, under appropriate instructions.

Appellant's first contention on appeal is that, under the record, the confession introduced in evidence as state's exhibit #13 was shown to be inadmissible as a matter of law and, for such reason, the case should be reversed.

Briefly, the evidence presented on the question of the admissibility of the confession shows that, after receiving word that his wife's body had been found and that the sheriff wanted to talk to him, appellant came from Borger—where he had been working—to Midland, on Saturday night, July 7, 1962, arriving at the sheriff's office around 11:30 p. m. After talking to deputy sheriff Kirksey for about an hour and a half, appellant was permitted to go, with instructions to return the next morning at 8 a. m. He then left the sheriff's office and went to the home of Elizabeth Johnson.

At 6 a. m., Sunday, Sgt. Jesus Morales, of the city of Midland police department, went to the Johnson home and took appellant to the police station for questioning about his wife's death. Appellant was questioned at intervals during the day and also on that day was visited by his sister, Annie May Owens, his mother-in-law, Rachel Garnett, and Elizabeth Johnson. There was a dispute in the testimony as to whether he was questioned after midnight, appellant swearing that he was and the officer stating that he was not.

On Monday, July 9, appellant was taken from the city jail around 7:30 a. m., by Sgt. Morales and Sgt. Kuykendall and the three proceeded to the place where his wife's body had been found. When appellant led the officers to the hole in the ground he stated, "'I guess that is where she was buried.'"

From the scene, appellant was then taken to the Department of Public Safety, where he was given a polygraph examination by Officer Burl Reed. During the afternoon, appellant was questioned and late that evening he made and signed a written statement to Sgt. Morales in which he admitted killing his wife by shooting her with a gun. After signing the statement, appellant was taken before a magistrate, when bond was set, and in default of bail he was then returned to the city jail.

There is a dispute in the testimony as to whether appellant was questioned on Tuesday, appellant stating that he was and Sgt. Morales testifying that he was not.

No claim was made by appellant that he. was questioned on Wednesday, and there is a conflict in the testimony as to whether he was carried that day or the following day to Borger, where his truck was searched by

the officers. Suffice it to say that he was carried on one of the two days to Borger, where the officers, with his consent, did search his truck.

On Thursday, July 12, appellant was again taken by Sgt. Morales to the Department of Public Safety at Midland, where another polygraph examination was given him.

Following this examination, appellant gave a second written statement to Sgt. Morales in which he admitted killing his wife by strangling her with a belt.

On Friday, July 13, appellant was delivered by the city officers to the sheriff and placed in the Midland County jail.

There is no claim that appellant was questioned by anyone from Friday until Tuesday, July 17, around 10:30 a. m., when he was questioned by deputy Howell and district attorney Joe Mims and, after being duly warned, made and signed the written confession introduced in evidence.

The proof further shows that before appellant made and signed the third statement, which was introduced in evidence, he had consulted with an attorney.

In his testimony, appellant stated that he was threatened and physically abused by Sgt. Morales, Ranger John Wood, and polygraph operator Reed. This was denied by them. Appellant also claimed that he was without food while in custody of the city police. Appellant's testimony was, in substance, that he signed the first two confessions because he was scared, sick, and hungry and that the reason he signed the third confession (state's exhibit #13) was because he was scared and afraid that he would receive the same treatment which he had received while in custody of the city officers: that he had already signed two statements and "didn't figure it made any difference."

Testimony was presented by the state that appellant was offered food which, on occasions, he would refuse. On other occasions he was given milk and soup, which was for a stomach condition he claimed he had.

None of the officers who appellant claimed had threatened and physically abused him when he made the first two confessions were present when he made the third confession to deputy sheriff Howell.

In a supplemental transcript, certain findings by the trial court which were reduced to writing and filed in the trial court have been forwarded to this court, in which the trial judge certifies that at the conclusion of the hearing, in the jury's absence, he found the confession offered in evidence as being voluntary and admissible.

■ We have concluded to accept such belated entry and filing of the trial court's findings in passing upon the admissibility of the written confession, under the decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

■ While the record reflects that an issue was raised as to the voluntary nature of the confession, which issue was submitted to the jury, the evidence is undisputed that before appellant made the confession introduced in evidence, he had been taken before a magistrate, at which time charges were preferred against him and bail set. Further, appellant, while in custody, had been visited by relatives and friends and had consulted with an attorney.

Under the record, we are unable to agree that there are any undisputed facts which rendered the confession inadmissible as a matter of law. See: Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L. Ed. 1481.

We have carefully examined the authorities, state and federal, cited by appellant, and do not deem them here controlling under the facts.

Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is not here controlling, because in that case Escobedo asked to consult with counsel and his

request was denied. In the instant case, no request was made by appellant to consult with counsel at the time he made the confession.

■ By informal bill of exception, appellant complains that error was committed when officer Wayne Gideon was permitted to testify that after appellant signed one of the prior statements he said, " 'I feel like I can eat something now. I have that knot out of my stomach. I got it all straight with the Lord.' " Appellant's objection to the testimony was on the ground that he was in custody and it was not admissible for any purpose.

We perceive no error, as the testimony related to appellant's acts and statements during his interrogation about the crime and was admissible on the issue of the voluntary nature of the confession. Such testimony was in rebuttal of testimony offered by appellant on the question of the voluntary nature of his confession, and, as a part of the same transaction, was admissible under Art. 728, Vernon's Ann.C.C.P.

■ We overrule appellant's remaining contention that the evidence is insufficient to sustain the conviction because his confession was not corroborated. The other surrounding facts and circumstances, when taken in connection with the confession, are sufficient to establish the corpus delicti under the rule stated in Kugadt v. State, 38 Tex.Cr.R. 681, 44 S.W. 989. See, also, Bosquez v. State, 166 Tex.Cr.R. 147, 311 S.W.2d 855, and Fruechte v. State, 166 Tex. Cr.R. 496, 316 S.W.2d 418.

The judgment is affirmed.

Opinion approved by the Court.

## AMENDED OPINION ON APPELLANT'S MOTION FOR RE-HEARING

MORRISON, Judge.

In an exhaustive brief on motion for rehearing appellant challenges the soundness of our original opinion on several grounds. Appellant challenges the authority of this Court to consider the belated finding of the trial court on the issue of the voluntariness of the confession. This Court has, since the rendition of the opinion of the Supreme Court of the United States in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, (January 18, 1965), adopted the practice which was approved in that case and has accepted such findings in four other cases.

Collins v. Beto, 5 Cir., 348 F.2d 823 (June 18, 1965), was not distinguished from the case at bar in our original opinion. We shall do so now.

1. In Collins neither this Court nor the United States Court of Appeals had before them a Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, finding by the trial court on the question of the voluntary nature of confession. In the case at bar we do have such a finding.

2. The decision of the majority in Collins was based on the involuntariness of Collins' confession as a matter of law. The resolution of Collins' claims with regard to Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, was attempted only by Chief Judge Tuttle, whose opinion also found the confession to be involuntary. Viewed in this light, we do not find Collins determinative of the appellant's claim under the exclusionary rule of Wong Sun.

3. After arrest, Collins was moved to an out of town jail in Humble where he was booked for vagrancy under the name of Joe Smith, although the officers admitted that they had no basis for such charge and knew his name was not Joe Smith. In the case at bar no groundless charge was filed against appellant under another name, nor was he incarcerated in any out of city jail with the exception of a brief stay of less than one hour in the police station at Borger on the day that his truck was searched plus a visit to the Midland Department of Public Safety where he was given a polygraph test.

**658** 

4. Both statements made by Collins were reduced to writing prior to his being taken before a magistrate. In the case at bar the confession which was introduced was taken from this appellant after he had been carried before a magistrate where bond had been set.

5. Collins had seen no relatives or friends prior to making either of his two confessions. This appellant had been visited in jail by friends and members of his family and had spoken to a lawyer before he made the confession which was introduced.

6. Collins was credited with an I. Q. in the lower ten percent of the population and with the mentality of a child. This appellant had succeeded exceptionally well as foreman of a pipeline crew according to the testimony of his employers, which would be indicative of a thorough awareness of what he was doing.

7. Collins' two confessions followed a long period of questioning by teams of officers. Appellant had not been questioned at all for three days before the short period of interrogation which preceded the taking of the statement which was introduced in evidence. There was no evidence of undue pressure being applied to appellant at this time.

Originally we did not discuss eo nomine the question of whether the corpus delicti had been established. A most workable definition of the elements of the corpus delicti of a murder case in Texas may be found in Smith v. State of Texas, 5 Cir., 329 F.2d 498. We find such elements to have been established in the case at bar.

This case has received careful consideration by the members of this Court, and we remain convinced that it was properly decided originally.

Appellant's motion for rehearing is overruled.

On Remand

BELCHER, Judge.

This is a conviction for murder; the punishment was assessed at twenty-five years.

The conviction was affirmed by this Court in Clewis v. State. However, the Supreme Court of the United States granted certiorari; reversed the judgment of the Court of Criminal Appeals with costs, and remanded the cause to this Court for further proceedings not inconsistent with its opinion. (Clewis v. Texas, 386 U.S. ——, 87 S.Ct. 1338, 18 L.Ed.2d 423.)

The opinion of the Supreme Court requires that appellant's motion to reverse and remand this cause be granted.

The judgment of the trial court is reversed and the cause is remanded.