## Henry Lott v. The State.

### No. 641. Decided October 26, 1910.

**1.—Murder—Charge of Court—Recalling Jury—Practice in District Court.**

Upon trial of murder there was no error in the court's action in recalling the jury and withdrawing a charge from their consideration and giving them other proper instructions. Following Bogan v. State, 30 Texas Crim.· App., 466.

**2.—Same—Charge of Court—Confessions—Corroboration.**

On trial of murder, where the court charged the jury that an extra-judicial confession standing alone is not sufficient proof of the corpus delicti, but is sufficient if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction in the minds of the jury beyond a reasonable doubt, there was no error; and such suppletory evidence need not be conclusive in its character and may be proved by circumstantial evidence.

**3.—Same—Sufficiency of the Evidence—Corpus Delicti.**

Where, upon trial of murder, the evidence was sufficient to show that the charred remains was the body of the deceased; that he came to his death by violent means, and that the defendant was one of the guilty agents that inflicted the injury which caused his death, the conviction of murder is sustained.

Appeal from the District Court of Bowie. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Geo. W. Johnson,* for appellant.—On question of recalling jury and giving instructions:  Goss v. State, 40 Texas, 520.

On question of confessions and insufficient corroboration:   Early v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—Appellant was indicted for murder, and his trial resulted in a conviction of murder in the first degree with a life sentence in the penitentiary.

The indictment charged that appellant, in the county of Bowie, State of Texas, on the 12th day of June, 1909, did kill and murder William Temple by cutting him with a razor, or with some sharp instrument, and by choking said Temple and by striking him with some instrument to the grand jurors unknown, and by setting fire to the house in which the said Temple then and there was, and burning the said William Temple up.  A summary of the testimony discloses that the said William Temple was a bachelor and lived in, what is called in the statement of facts, the bottom in north of Hooks.  He was a tolerably old man and lived on Mr. Barrow's farm.  The appellant Lott lived but a short distance from Temple's house and the State's witness Stature lived in about a quarter of a mile of Temple.  Mr. Nicholas Barrow and his wife lived in the house with Temple.  On Thursday before the house was burned on Saturday, Mr. Barrow and his wife left home and went off several miles visiting his mother. He left Temple at home and never saw him any more after he left on Thursday and was at his mother's on the night the house burned. Temple was seen on Saturday about one or two o'clock in the afternoon before the house burned on Saturday night.  The house was a two-story house and the deceased usually slept upstairs over the front part of the lower story of the house.  There was a shed room in the back of the house.  On Sunday morning after the house burned parties went to the place and found the charred remains of a person, the head entirely burned off and the legs burned off up to the knees, and the arms were burned away.  However, there was enough of the remains found for the doctor to be able to say positively that the remains were those of a human being and those of a male and a grown man. The house was entirely consumed and these human remains were found not on the ground directly under the room in which the deceased generally slept, but were found where the shed room was.  About where the remains lay and right about where the neck and head of the party would have been was found a lot of burned blood.  This burned matter was examined by a physician and pronounced to be unquestionably blood.  The witness Barrow testified that he had on the place six razors.  He located where these razors were usually kept. None of them were kept in this shed room where the body was found. In about a foot of where the body lay there was found the blade of a

razor. The witness Barrow further testified that he kept a can of oil and that it usually sat out on the front porch close to the end of the gallery. That he discovered, after the house was burned, this oil can, but it had been burned in the fire, the tin being left which showed what it was, and that this oil can, when he left, contained oil. The witness further testified that he found some keys near the bed ten feet from the body and they were the crib keys witness had given deceased on Thursday before; also was found near the bed buckles that came off the pants. There was no other evidence of identification other than what is above set out. The appellant in this case, together with one of the State's witnesses, Stature, and another party by the name of Brunson were all arrested for this offense. The appellant in this case made two written confessions in regard to the matter. The first confession was that he was present at the time the house burned and on the night it burned; that he had been invited by Brunson to go with him to Stature's house that night to gamble with the boys and that he went there with Brunson and nobody came and they started to go home when Brunson suggested that they go up to Temple's house and get some whisky and his money, when, he claims, he refused to do it and one of them threw his gun on him and told him he had to go, and that he went and stood in the potato patch and saw them set fire to the house and burn it up, and when they started home they told him they would kill him if he ever told it. In about six hours after he made this confession he made another confession and in the latter confession he stated that Stature and Brunson got $105 in greenbacks from William Temple that night out of a trunk at his house; that they also got some groceries and gave the defendant some of them; that they broke into the house at the back door and that Temple did not wake up while they were robbing the house; that they had him to go out on the front gallery to watch and let them know if anyone came near; that Stature suggested that they kill Temple after they had robbed the trunk, and that he suggested this after they had robbed him of his money and gave as the reason that everybody around there knew he was drunk and would think that he got up to cook him something to eat and had set himself on fire, and Brunson then spoke up and said he would kill him and appellant continuing said: "And got a razor off of the shelf and went and woke the old man up. Allen shoved him up near the stove and cut his throat and he fell down next to the apron of the stove, and then we went and got an oil can and poured oil all over the floor around there and set fire to it. T. I. Stature got the money and never gave me any of it. They said they would divide with me as soon as everything got quiet." The State used the witness Stature as a witness as well as his wife. He lived in about a quarter of a mile of the deceased, and he testified that about nine o'clock Saturday night the appellant in company with Brunson came to his house and sat and talked awhile and left, going in the direction of where

Temple lived; that he and his wife went to bed and that they were aroused about 11:30 and saw this house on fire, but did not go down there. Stature's wife testified to the same state of facts, both disclaiming any knowledge either of the murder and setting fire to the house or who did it.

The court in his charge to the jury gave a full charge upon all the issues raised. He charged the jury that if they found the witness Stature was an accomplice his testimony would have to be corroborated. He also charged them that if Stature was an accomplice they would disregard the testimony of his wife altogether. He further charged the jury that in determining the corpus delicti, that is, that William Temple was dead and that he came to his death by violence intentionally inflicted, they might consider the confessions of the defendant together with other testimony both as to the identity of the dead body as well as that his death was brought about by the criminal agency of someone. This charge was complained of. Also the court charged the jury that the confessions of the defendant had to be freely and voluntarily made or they would reject them. We find in the motion for new trial complaint is made of the charge of the court in that it was error for the court to direct the jury that they might take the confessions of the defendant together with other testimony to establish the death by violence as well as identity of the deceased, and instead of the court so charging the jury he should have directed them that the corpus delicti must be proved independent of the confessions. We find in the record a bill of exceptions to the action of the court, after the charge had been delivered to the jury and after they had retired from the courtroom for some time, in returning them into court and giving them additional instructions. Appellant sets out that portion of the charge which had been originally given and which was withdrawn, and the charge that was given when the jury were brought back. It seems that in the original charge the court had directed the jury that the corpus delicti had to be established independent of the confessions of the defendant. When the jury were brought back this charge was changed and the jury directed that they might take the confessions in connection with the other testimony to establish the corpus delicti. In explanation to this bill of exceptions the court stated that he delivered his charge to the jury, and they went to supper and came back and before they started into the deliberations of the case he called them back and gave them the instructions here complained of. The contention of appellant is that not only the charge, given when the jury were called back, was error, but that the court had no right to give the same, except when demanded by the jury. The action of the court was not error in bringing the jury back. If the court below had concluded that the charge as given was erroneous, we think the power was lodged with him to have recalled the jury and to have given them proper instructions. See Bogan v. State, 30 Texas Crim. App., 466. Now,

was it error for the court to have told the jury that the confessions might be taken into consideration in connection with the other evidence in the case in establishing the corpus delicti? It is essential to a conviction for any degree of culpable homicide, first, that the deceased should be shown to have been killed; and, second, this killing should have been proven to have been criminally caused by the act or agency of the defendant, and unless the corpus delicti in both these respects is proved, a confession is not by itself enough to sustain a conviction. Again, an extrajudicial confession standing alone is not sufficient proof of the corpus delicti. But a confession is sufficient if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction in the minds of the jury beyond a reasonable doubt. And such suppletory evidence need not be conclusive in its character. Our statute, Penal Code, article 654, provides that no person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the fact of the death of the person charged to have been killed. All of the above propositions were carefully considered in the case of Kugadt v. State, 38 Texas Crim. Rep., 681, and it was there held that while the statute requires that the remains be sufficiently identified it is nowhere said that the testimony must be positive upon that subject. If it be circumstantial that is all that is necessary, if it sufficiently identifies the remains or the portions thereof found, as those of the deceased. The court, speaking through Judge Hurt, says: "There is some conflict in the authorities as to whether or not the corpus delicti can be proved by circumstantial evidence, but the great weight of adjudicated cases is in favor of the proposition that it can be done. . . . The general doctrine is that extrajudicial confessions, standing alone, are not sufficient proof of the corpus delicti; and some of the cases hold that the corpus delicti must be proved independently of confessions. But we do not understand such to be the better doctrine. In other words, in the establishment of the corpus delicti the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. See note 3 to case of State v. Williams, reported in 7 Am. Dec., p. 254. And this rule is recognized in this State. See Jackson v. State, 29 Texas Crim. App., 458. Said case quotes with approval an excerpt taken from 4 American and English Encyclopedia of Law, p. 309, as follows: 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a reasonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of

the accused.' 'Full proof of the body of the crime, the corpus delicti, independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient.' . . . We take it that there can be no question that the prosecution is permitted to prove by circumstantial evidence the corpus delicti, and in aid thereto use confession of the appellant.' " We therefore hold that the court did not err in refusing to direct the jury that the corpus delicti had to be proved independently of the confessions, but that the confessions might be taken in connection with the circumstantial evidence of the case and in aid thereto to determine this fact. Now, what are the circumstances in aid of the confessions? First, the house was destroyed. The deceased Temple lived in that house. He was seen on the evening of Saturday about half past one or two o'clock on the 12th day of June, 1909. He has never been seen or heard of since. He was at the house alone. The house burned about eleven o'clock at night; when the neighbors gathered next morning they found the charred remains that were identified as being that of a grown man. He lay in the shed room close to the cooking stove; he was lying with his front down, that is, his back was up and he was lying on his breast. Right under his neck or throat there was quite a cake of blood. In two feet of him there was a razor blade. This cake of burned stuff was identified by the doctors as blood. Does this testimony show violence? We think unquestionably that this evidence indicates that the deceased came to his death, or that this party came to his death from violence either self-inflicted or by someone else. Could it have been self-inflicted? The circumstances would contradict this theory. The condition of the body and the blood under the throat would indicate that the party was not able after his throat was cut, this large cake of blood being right under it, to move around much. Again, what was he doing in the shed room at that hour of night? The appellant in this case tells of circumstances as to how he came to his death that correspond with the physical facts surrounding the body. He says his throat was cut; blood was found there. He says it was done with a razor; a razor was found there. We are inclined to hold that the testimony is abundantly sufficient to show that these charred remains was the body of the deceased Temple; that he came to his death by violent means; that the appellant was one of the guilty agents that inflicted the injury which caused the death. The jury had the matter before them. They passed upon the facts. Believing they were sufficient, the judgment of the lower court is affirmed.

*Affirmed.*