LENA HUNTER V. THE STATE.

No. 17128. Delivered January 16, 1935.
State's Rehearing Denied March 13, 1935.

The opinion states the case.

,J. Earle Kuntz, of Wichita Falls, for appellant.

Glenn Wilson, Co. Atty., of Montague, and Lloyd W. Davidson, State's Atty., of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of being an accessory to the murder of her husband, Charles Hunter, and her punishment was assessed at confinement in the State penitentiary for a term of two years.

The record discloses that Scott McGahe was indicted, tried and convicted of the offense of the murder of Charles Hunter and his punishment was assessed at confinement in the State penitentiary for a term of 10 years; that he had prosecuted no appeal from said judgment of conviction and at the time of the trial of this case was serving his term in the penitentiary. McGahe, after being arrested, made a voluntary confession, which was introduced as evidence by the State, which, omitting the formal parts, reads as follows:

"My name is Scott McGahe. I live at Bowie, Texas, and for the last month I have been living with Mr. and Mrs. Charles Hunter. On Friday, December 1st, 1933, Mr. Hunter and myself went out to Mr. E. F. Franklin's place to get some liquor. We left Mr. Hunter's place about two o'clock P. M. We got down there about 4 o'clock in the afternoon and Mr. Franklin was not at home. We then went hunting down on the creek and went back to the house when Franklin came home. This was about sundown and went back to the creek and had two drinks and bought a gallon and started home. When we left Franklin's house we went west to the railroad and came in the direction of Bowie. After we had gone up the railroad about 3 miles we began to quarrel and continued to do so for

about one-half mile. * * * When we reached the railroad cement bridge we set the liquor down and started to fight, he came at me and I hit him with my shotgun, knocking him down. Just as he started to rise I stabbed him near the heart with my pocket knife. I then rolled him off the bridge and he fell about nine or ten feet to the bottom of the ditch. I then kicked his hat off of the bridge and threw the knife away in a Northeastern direction as far as I could throw. The whisky was broken during the fight, it was in a towsack and after throwing him off the bridge I carried the sack and broken jars west of the bridge and poured the glass out and carried the sack home. * * * I left the single barrel shotgun at the overhead bridge and went to Farar's Service Station and bought some candy and snuff. I then went back to the bridge and got the gun, went to the house and went to bed. There was no one else connected with this killing."

After the body was found a court of inquiry was instituted and conducted on the same day. The appellant was summoned to appear and did appear before said court and testified, denying that she knew anything concerning the death of her husband until the morning of the day on which the body was found. It appears from the record that the court of inquiry engaged the services of a stenographer to take the testimony adduced at said hearing, but the stenographer was not called upon to transcribe the appellant's testimony and the transcript of such testimony was not offered in evidence. Instead, two officers were called upon to relate the testimony given by her at the court of inquiry which showed that she denied having any knowledge of when and how her husband came by his death or who killed him. She stated at the court of inquiry that McGahe and her husband went hunting on December 1, 1933, the day that her husband was alleged to have been killed, but that they returned for supper and after supper her husband again left home while McGahe remained there and retired to his room about 9 P. M. She denied that when she was in the postoffice on the afternoon of December 7 that she mailed a card to the police advising them about where they might find the body. She admitted that McGahe informed her that the body of her husband had been found on the morning that it was found. In addition to the testimony given by the appellant at the court of inquiry and related by said two officers upon this trial, the State introduced what is termed the voluntary confession of appellant, which, omitting the formal parts, reads as follows:

"My name is Mrs. Lena Hunter. I live at Bowie, Texas. On Thursday, December 7, 1933, I mailed a card addressed to the police of Bowie, Texas, stating that there was a dead man about two or three miles north of the town of Bowie on the railroad. Scott McGahe told me that there was no need of me suffering any uneasiness about Hunter taking the babies. I did not know that Charles Hunter was going to be killed the afternoon he left. Scott told me that he left him down the railroad. I think Scott told me this on December the 6th. The reason I say that it was on December 6th that Scott told me this is because I only spent one sleepless night before mailing the card on December the 7th. It was my thoughts that Scott had killed Charles Hunter when he told me that I need not worry about him stealing my babies. After I had found out that Scott had killed Charlie I did not have the nerve to notify the officers. The reason for stating that the body could be found where it really was not found was because I did not have the exact information."

The appellant's main contention is that the testimony is insufficient to warrant her conviction as accessory to the murder of her husband. An accessory is one who knowing that an offense has been committed conceals the offender or gives him any other aid in order that he may evade arrest or trial or the execution of his sentence. Bishop on Criminal Law lays down the rule as follows: "The test of an accessory after the fact is that he renders his principal some personal help to elude punishment. One is not an accessory who merely neglects to make known to the officers that a felony has been committed or who forbears to arrest a felon or agrees not to prosecute him, nor does the fact that one agrees for money not to give evidence against a felon or knows of the felony and does not disclose same make the party an accessory after the fact. There must be some independent criminality to make an accessory. By independent criminality is meant such aid as suggested above to enable the party to escape after the commission of the crime." It seems that this definition has been adhered to in the decisions by this court, and the mere fact that the witness denied any knowledge of the matter when first interrogated would not constitute her an accessory under the facts of this case. In the case of Villareal v. State, 80 Texas Crim. Rep., 133, 189 S. W., 156, this court said: "Mere failing to report the transaction to an officer, when one has no other connection therewith, will not constitute one an accessory." A person can not be said to be an accessory to a party charged with a

felony unless he knows that the felony has been committed although he may furnish him some means by which he may make his escape or hide and conceal his crime. It must be made to appear either from the facts or circumstances, or both, that the party charged with being an accessory had actual knowledge that the offense was committed. In the case under consideration we fail to find any evidence which would show that appellant knew that her husband was killed prior to the morning of the day on which the court of inquiry was conducted. There is nothing in McGahe's confession that he ever informed the appellant that he had killed her husband, and according to her testimony before the court of inquiry she did not know of it until after her husband's body was found and just before the court of inquiry was being held. Of course she said that on December 6th McGahe told her he had left her husband down the railroad; that she thought that McGahe had killed her husband when he told her that she need not worry about him stealing her babies, but this was not actual knowledge of the commission of the offense; it was merely a presumption on her part from the statement that McGahe had made to her. The fact that she mailed the card on December 7th addressed to the officers in the town of Bowie notifying them that the body could be found where the deceased's body was not found was because she did not have the exact information. It cannot be termed such active aid in behalf of McGahe that he may evade arrest and trial or the execution of his sentence in that she did not know that McGahe had actually killed her husband. If she knew that McGahe was going to kill her husband and either advised or encouraged him in the commission of the act, although she was not present at the time of the commission thereof, she would have been an accomplice and not an accessory after the fact. From her voluntary confession it appears that she endeavored to inform the police that there was a body of a dead man on the railroad about three miles north of town. She said in the confession that the error in her statement as to the place where the body could be found was by reason of the fact that she did not have exact information; that after she found out that McGahe had killed her husband she did not have the nerve to tell the officers.

The State's case is made to depend entirely upon the alleged false statement appellant gave before the court of inquiry, principally to the effect that deceased did return home with McGahe on the afternoon of December 1st and again left his home at about 9 o'clock when in truth and in fact he had been

murdered about four or five o'clock in the afternoon, but the State has wholly failed to show that the appellant knew at that time that her husband had been murdered by McGahe. In her testimony before the court of inquiry she repeatedly denied knowing anything regarding the killing of her husband. These facts were developed by the State. In her confession, which the State introduced, there are statements from which it may be reasonably concluded that she did have knowledge of the murder of her husband and that McGahe had murdered him, but is there any testimony other than by the confession of the appellant that at the time she testified before the court of inquiry she then knew that McGahe had murdered her husband? We have carefully searched the record but are unable to find any such fact, but on the contrary the State introduced proof that she stated that she did not know anything regarding the killing of her husband. It is now the well-settled rule in this State that an extrajudicial confession standing alone and uncorroborated is not sufficient to sustain a conviction. See Johnson v. State, 36 S. W. (2d) 748, and authorities cited; Brady v. State, 32 Texas Crim. Rep., 264; Nolan v. State, 129 S. W., 1108; Lott v. State, 131 S. W., 553.

Having reached the conclusion that the testimony is insufficient to warrant and sustain the conviction, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

The foregoing opinion of the Commision of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State, by its County Attorney of Montague County, has filed a motion for rehearing. The State seems to lay much stress on the fact testified to by Mrs. Barrett that on Saturday morning appellant told witness that deceased had gone away on Friday night to fix some "vats" used in manufacturing liquor, it being contended by the State that deceased had been killed on Friday afternoon, and appellant knew it, hence told Mrs. Barrett a falsehood about it to conceal McGahe. The same witness also testified that several days after deceased disappeared appellant was disturbed and uneasy when her little boy was late coming in from school, and expressed some fear that Charlie (deceased) had stolen him away. Why this fear if she knew he was dead? The question

which disturbs us occurred to our State's Attorney. After stating the case we find in his brief the following: "The troublesome question, therefore, is presented: Does the testimony show, other than by the confession of appellant, that, at the time she testified before the court of inquiry, she then knew that McGahe had murdered her husband? I have been unable to find any other testimony which would tend to show such fact; but, to the contrary, the State introduced proof that she stated that she did not know anything regarding the killing of her husband. It is now almost axiomatic that, an extrajudicial confession, standing alone and uncorroborated, is not sufficient to sustain a conviction. Johnson v. State, 36 S. W. (2d) 748, and authorities there cited. One of the essential elements for the State to establish is that appellant, at the time she testified before the court of inquiry, knew that McGahe had murdered her husband; and, this fact being found only in the confession, the sufficiency of the evidence to support the conviction is seriously doubted."

We have again reviewed the facts and find no sufficient corroboration of the confession on the point that when appellant testified before the court of inquiry she knew McGahe had killed deceased. This we regard as requisite. In addition to the authorities cited in our original opinion we refer to Hernandez v. State, 110 Texas Crim. Rep., 159, 8 S. W. (2d) 947. We feel constrained to adhere to the conclusions reached in our original opinion.

The State's motion for rehearing is overruled.

*Overruled.*