**Jesus Sanchez ALVAREZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08–90–00195–CR.**

Court of Appeals of Texas,
El Paso.

Feb. 13, 1991.
Rehearing Overruled March 13, 1991.

Before FULLER, WOODARD and KOEHLER, JJ.

OPINION

WOODARD, Justice.

This is an appeal from a denial of habeas corpus relief in the 346th District Court. Appellant seeks a double jeopardy bar to further prosecution for injury to a child in cause number 55866, pending on the docket of another El Paso court, the 34th Judicial District Court of El Paso County, Texas. A prior trial of that cause commenced on October 2, 1989. A jury was selected and sworn the following day, October 3, jeopardy thereby attaching. On October 5, the court granted prior defense Motions for Mistrial. These motions concerned prejeopardy errors by the court and prosecution. The motions were initially overruled prior to the attachment of jeopardy, but were reconsidered and granted after jeopardy. The court inquired of the defense as to their posture on the motions. The defense responded that they were neither re-urged nor withdrawn and could not be reconsidered by the court. The court, therefore, considered the motions still subject to further ruling and granted them on the basis of individual and cumulative deprivation of a fair trial.

The ruling on these prejeopardy mistrial motions arose during untimely proceedings under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). On the basis of the State's use of eight peremptory challenges against hispanic members of the jury panel, Appellant lodged a *Batson* complaint and sought the appropriate evidentiary hearing after jury selection but before administration of the oath and discharge of the remainder of the panel. Over objection, the court dismissed the panel and conducted the evidentiary hearing after the petit jury was sworn.

Ultimately, the court did not rule on the *Batson* complaint, granting a mistrial on the other prejeopardy motions. The asserted errors upon which these motions were based included:

Marcos A. Lizarraga, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

(1) Improper, extensive voir dire of the jury panel by the trial judge, particularly in the areas of reasonable doubt, witness credibility and propriety of punishment;

(2) Exposure to the panel of the anticipated testimony of witnesses in the context of discussing the above issues;

(3) Exposure of the fact that the Appellant's wife, a codefendant, had reached an agreement with the State in exchange for her testimony, that she had entered a plea of guilty to injury to the child by omission and that based upon a State recommendation she had been placed on probation for ten years;

(4) Profane and prejudicial side-bar comments by the prosecutor concerning defense counsel's voir dire presentation, made within the presence and possible hearing of the jury panel;

(5) Pejorative, prejudicial comment by the prosecutor concerning defense counsel in the hallway, outside the courtroom, at a time when panel members were arriving for the morning session.

Appellant presents three points of error. The first asserts that it was error to grant a mistrial purportedly on the basis of Appellant's prejeopardy motions which had already been ruled upon and were no longer being *actively* urged after jeopardy attached. The second point, assuming the first point to be correct, asserts that the court's, in effect, sua sponte mistrial order was not supported by manifest necessity. Finally, Appellant asserts that the Motions for Mistrial were intentionally provoked by the court and prosecution to lead to a mistrial and a possible loss of rights under the double jeopardy clause.

At the outset, we disregard the purely semantic differences which may exist prior to jeopardy with regard to Motions to Quash the Array as opposed to Motions for Mistrial. As noted by Appellant, various authorities treat the two as synonymous. See e.g., 3 Teague and Helft, *Texas Criminal Practice Guide*, § 72.03[6] (1990). Appellant himself employed both phrasings during the voir dire segment.

With regard to Appellant's first point of error, we reject a flat rule that once an objection or motion is ruled upon the court may not reconsider the point and alter his ruling. We understand the backup comfort which defense counsel may experience in obtaining what would appear to be assured reversible error and the consternation attending a reversal of the offensive ruling, removing the defense's ultimate safety net. The constitution and rules of procedure, however, are primarily intended to insure the right to a fair trial and are not intended to create a vested right in reversible error. The various rules of procedure are replete with examples of situations in which a court may alter an initial ruling. *See e.g.*, Tex.Code Crim.Pro.Ann. art. 38.22, § 6 (Vernon 1979); Tex.R.App.P. 30(b); Tex.R. Crim.Evid. 104(b). *Williams v. State*, 94 Tex.Crim. 60, 249 S.W. 852 (1923); *Lott v. State*, 60 Tex.Crim. 162, 131 S.W. 553 (1910).

Appellant suggests without persuasive authority that the court's inherent power to reverse its rulings does not traverse the point at which jeopardy attaches. Herein lies the peculiar nature of the case before us. The prejeopardy motions were overruled at that time, but the court reversed its position after jeopardy attached. Obviously, the only significance, and that invoked by the Appellant, concerns the applicability of the basic rules of double jeopardy and certain corollaries concerning prosecutorial misconduct and provocation.

 A mistrial granted prior to attachment of jeopardy poses no double jeopardy bar. After jeopardy attaches, a mistrial granted upon defense request also avoids the double jeopardy bar, *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), unless the defense request was intentionally provoked by prosecutorial misconduct. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). A mistrial granted by the trial judge sua sponte can only be upheld if based upon manifest necessity. *Oregon v. Kennedy*, 456 U.S. at 683–684, 102 S.Ct. at 2093–2094,

72 L.Ed.2d at 429–30; *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

■ As noted, in the case before us, the defense complaints were lodged and overruled prior to jeopardy attaching; the change in ruling to grant the mistrial occurred after jeopardy attached. Two United States Supreme Court decisions offer some guidance in the proper resolution of the present appeal. *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). In *Lee*, after the prosecutor's opening statement, but before attachment of jeopardy in the bench trial, the defense moved to dismiss the prosecution due to a defective charging instrument. The court preliminarily denied the motion but indicated he would review the matter at the first opportunity. Jeopardy attached, and a two hour evidentiary segment took place (the State's case-in-chief). The judge took a fifteen minute recess, reviewed authority on the charging instrument complaint and concluded that the defense was correct. He, therefore, granted the Motion to Dismiss, carefully delineating that his ruling reflected no assessment of guilt or innocence.

In *Scott*, the defendant had moved unsuccessfully prior to trial that two counts of his indictment be dismissed due to pretrial delay. He renewed his motions during trial, and at the close of all the evidence, the trial court granted such motions. In both of these cases, the Supreme Court determined that reprosecution was not barred by the double jeopardy doctrine.

Admittedly, there are factual distinctions between these cases and the record before us. In *Lee*, the defense was somewhat tardy in presenting its motion after the prosecution's opening statement and thereby posing a disruption of the trial proceeding. Voicing a *minority* concurrence, Justice Brennan suggested that a different result should obtain had the trial judge received greater forewarning, a minority position harmonious with the defense posture in the present case. In a lone dissent, Justice Marshall pointed out that the question before the judge was easily resolved during a fifteen minute recess and could have been accomplished prior to jeopardy with minimal disruption of what was in fact only a two-hour bench trial. In addition, although the defendant did not renew his motion after jeopardy, the court's prejeopardy ruling was expressly tentative and still pending final resolution—a fact not present before us other than through the court's inherent power to correct its rulings.

The primary distinction in *Scott* is that the defendant renewed his motions after jeopardy, unlike Appellant's counsel who neither withdrew nor re-urged his Motions for Mistrial.

We find two additional concepts in *Lee* and *Scott* which override this factual distinction. As pointed out by Justice Rehnquist's concurrence in *Lee*, 432 U.S. at 36, 97 S.Ct. at 2148, 53 L.Ed.2d at 91, these controversies are no longer to be determined upon the basis of a "bright line" temporal consideration of the motions and rulings measured against the attachment of jeopardy. It is the underlying constitutional rights and principles which should dictate the outcome. Secondly, in *Scott*, the majority noted that prior decisions had placed an undue emphasis on the concept of the "defendant's valued right to have his trial completed by a particular tribunal." *Scott*, 437 U.S. at 100–101, 98 S.Ct. at 2198–2199, 57 L.Ed.2d at 80, citing *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

With the foregoing concepts in mind, we turn to the points of error and record before us. We do not find that the trial judge could not reverse his prejeopardy rulings and subsequently grant a mistrial based upon the defense motion. The mere temporal passage of the attachment of jeopardy poses no impermeable barrier to such action. The motions were by the defense and were prejeopardy motions. For both reasons, had they been initially granted, retrial would not have been barred. The basis for the motions, judicial error and prosecutorial misconduct, while sound,

depicted prejeopardy error not shown inherently or by the habeas corpus record to have been intended to provoke a mistrial at that stage. Point of Error No. One is overruled.

■ Even if the court's ruling must be regarded as a sua sponte order of mistrial, the record does reflect manifest necessity. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Without belaboring the various conflicts that arose during voir dire, we find it sufficient to turn to the trial judge's comments concerning the expected testimony by the Appellant's wife. Shortly after discussing the various hypothetical degrees of culpability which might merit differing punishments under a broad range of punishment options, the court stated:

> Now, in this particular case, the wife of the defendant is going to be called to the witness stand by the State. And she has already pled guilty in this case to an act of omission in regards to injury to a child. And she has been given, in this case, there has been an agreement in exchange for her testimony. In other words, she will testify. And the State made a recommendation to this court regarding her potential punishment, which I followed. Her potential punishment and her punishment in that case was ten years probation.

We are mindful of the rule stated in *Mills v. State,* 626 S.W.2d 583, 585 (Tex.App.—Amarillo 1981, PDRR):

> Our Court of Criminal Appeals has repeatedly held that a juror's knowledge of the conviction of an accused's codefendant would not disqualify him, even though he may have heard the evidence on the trial which resulted in the conviction, unless he formed an opinion which would influence his verdict.

*See also Macias v. State,* 733 S.W.2d 192 (Tex.Crim.App.1987), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988); *Tatum v. State,* 134 Tex.Crim. 142, 114 S.W.2d 882 (1938). Here, however, the panel was not merely told that the codefendant's wife already had been convicted. They were told:

(1) She entered a plea of guilty;

(2) She was cooperating with the State and would testify on behalf of the State;

(3) Her guilt was predicated upon omission as opposed to the generally more heinous act of commission;

(4) Her punishment, in part an assessment of her degree of involvement and culpability by the State, was ten years' probation; and

(5) That her plea, conviction and probated punishment met with the approval of this trial judge.

The court could have more carefully broached the subject of credibility of convicted codefendant testimony, under plea bargain arrangements, by the use of hypotheticals. This would have avoided untimely exposure of facts to be brought forth in the pending trial and would have avoided a suggestion of the court's position on her relative culpability vis-a-vis the Appellant and her appropriate relative punishment. This comment by the court violated not only the principles governing voir dire examination but also the Tex.Code Crim.Pro. Ann. art. 38.05 (Vernon 1979) prohibition of judicial comment on the evidence and exposure to the jury of the judge's opinion of the case. The tenor and detail of the comment rendered it not susceptible to any curative instruction. Based upon this error alone, there existed a manifest necessity to abort the trial. Point of Error No. Two is overruled.

Apart from the *Batson* issues which were never resolved, there existed a prejeopardy manifest necessity for mistrial, based on judicial error. The other prosecutorial errors which occurred prior to jeopardy do not appear to have been calculated to provoke a mistrial. The testimony of the prosecutors at the habeas corpus hearing provided a sufficient basis for the trial judge's denial of relief. No abuse of discretion is shown. Point of Error No. Three is overruled.

The order of the trial court denying habeas corpus relief is hereby affirmed, and Appellant is susceptible to retrial under the indictment.

KOEHLER, Justice, concurring.

I reluctantly concur with Justice Woodard's opinion in which he would affirm the 346th District Court's denial of habeas corpus relief. Although it is obvious from the record that almost from the time the participants announced "ready" until the conclusion of the *Batson* hearing, the trial judge of the 34th District Court where the case is pending, had shed his cloak of judicial impartiality and donned the role of an advocate, he appears to have come to the sense of realizing that because of his and the prosecutor's conduct at a point in the trial where jeopardy normally would have attached, he had to find a way to obviate an almost certain appellate reversal and an unfavorable jeopardy ruling. He accomplished this by reconsidering, on his own motion, Appellant's previously denied Motions for Mistrial.

In the interest of justice, the right of a defendant not to be retried for the same offense must be balanced against the right of the public to a fair and properly conducted trial. The trial of this case had not gone so far that the trial judge would be precluded from reconsidering his previous incorrect rulings.

FULLER, Justice, dissenting.

I respectfully dissent. As is discussed in the majority opinion, there existed a prejeopardy manifest necessity for mistrial based on judicial error by Judge William E. Moody. This error was not minor in nature and, as is evident from the record, occurred prior to the swearing in of the jury and attachment of jeopardy. It was plain error for the court to proceed to trial. However, the court chose to do so.

The jury was sworn in but, before any evidence was heard, the court conducted a *Batson* hearing. Evidence before the court showed the State struck eight Hispanic women jurors. The prosecutor's notes on some of those jurors contained disparaging remarks which could be considered as not racially neutral reasons for striking the potential jurors. The court would *not* or at least did *not* rule on the *Batson* motion but inquired of the Appel-

lant if he wished to re-urge his prior overruled Motions for Mistrial. The Appellant declined as did the State. However, the State did not affirmatively urge the court to proceed to trial.

The question then arises ... why did the court deny the Appellant's Motion for Mistrial prior to swearing in the jury panel and yet after the *Batson* hearing (after the jury was sworn) he granted the pretrial Motions for Mistrial without ruling on the *Batson* motion?

In *Lee v. United States*, 432 U.S. 23, 35, 97 S.Ct. 2141, 2148, 53 L.Ed.2d 80, 90 (1977), Justice Brennan, in his concurring opinion, states that where a petitioner affords "the trial judge ample opportunity to rule on his motion prior to trial, and the court, in failing to take advantage of this opportunity, permitted the attachment of jeopardy before ordering the dismissal of the information." Justice Brennan continues on to state that "[i]n such a circumstance, the court's action or inaction would effectively deprive petitioner of his 'valued right' to receive a factual determination from the first empaneled factfinder...." This is a case that clearly delineates the situation that Justice Brennan sought to protect a defendant from, that of indiscriminate rulings directed at protecting the Court, not the defendant.

The trial court simply would not rule on the *Batson* motion. Instead, on his own, without any urging by the State or Appellant, he decided to reverse his rulings on the prejeopardy Motions for Mistrial. This may have been intended to avoid jeopardy attaching but such action violated Appellant's right to due process and a fair trial by his already selected peers.

It would serve no useful purpose to restate in detail the improper conduct of the prosecutor and the forcing of the Appellant to commence his voir dire of the jury panel at 5:25 p.m. after an hour and five minute voir dire by the court. I would grant the writ holding that double jeopardy barred retrial of the Appellant.