## JOE EDWARD SMITH V. STATE

No. 32,533.  January 11, 1961
Motion for Rehearing Overruled March 29, 1961

McDONALD, Judge, not participating.

*J. E. Winfree, Sr.* and *Joe Ed Winfree, Jr.*, Houston, for appellant.

*Dan Walton*, District Attorney, *Samuel H. Robertson, Jr., - Lee P. Ward, Jr., Gus J. Zgourides*, Assistants District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

DICE, Judge.

The offense is murder; the punishment, death.

The appellant and Adrian Johnson were jointly charged by indictment with the murder of William Merrill Bodenheimer.

Upon the granting of a severance, Johnson was separately tried and convicted with his punishment assessed at death. Upon appeal to this court, the judgment of conviction was affirmed in an opinion which is found reported in Johnson v. State, 169 Tex. Cr. R. 612, 336 S.W. 2d 175.

The facts in the two cases are similar and show that on the afternoon of July 20, 1959, the deceased, a young boy twelve years of age, left home on his bicycle to go swimming. Upon his failure to return at the expected hour, a search was made for him which ended at 9:45 a.m. on the following morning, July 21, when the nude dead body of the deceased was found inside a closed refrigerator in a small shack.

It was shown that on the evening of July 20, the appellant was seen around 6 p.m., with Adrian Johnson and some other boys at the Chuck Wagon, an eating place located a short distance west of the shack where the deceased body was found. At such time the deceased was also seen at the place and, as the appellant and his companions walked by, appellant was heard to say "Let's get the white boy when he leaves here." Thereafter, the deceased was seen to get on his bicycle and travel in the same direction the appellant and his companions had gone.

On July 21, appellant was arrested without a warrant at his home around 11:15 p.m. by Lt. T. F. Clark of the Robbery Divi-

sion of the Houston Police Department and taken to the police station for questioning concerning several robbery cases. During the questioning, appellant implicated himself in the murder of the deceased, and after being duly warned by Lt. Clark, made and signed a written statement on July 22 at 7:25 a.m., concerning the killing of the deceased which was introduced in evidence over appellant's objection as State's Exhibit No. 13.

In the statement appellant stated that on July 20, 1959, he was in company with his brother Ira Lee Saddler, Adrian Johnson, David Clemens, and Charles Archer; that around 6 p.m., as they were walking on West Gray, Charles Archer hit and knocked a white boy off a bicycle who looked to be about "ten or eleven"; that appellant and Adrian Johnson then grabbed the boy and "packed" him across the street; that Clemens picked up the boy and "packed" him to a little house while Archer was holding the boy's mouth to keep him from "hollering"; that Clemens took the boy inside the house and they all went inside except appellant's brother who stayed outside and brought the boy's bicycle to the house. Appellant then related how, after going inside the house, Clemens and Archer took off the boy's clothing and Clemens, Adrian Johnson, the appellant, and Charles Archer, in the order named, proceeded to commit rectal sodomy upon him. Appellant stated that after he had finished committing the act he went outside, that he went home, and that later in the night he saw David Clemens who told him that Adrian Johnson and David Clemens "had put the white boy in the ice box that was inside the little house."

It was shown by the testimony of Chemist and Toxicologist Robert F. Crawford of the Houston Police Department that a human hair found in the hip pocket of the trousers of Ira Lee Saddler (appellant's brother) compared with and had identical characteristics with hairs taken from the head of the deceased and from his pubic and anus region. It was also shown that on July 24 Chemist Crawford examined the bodies of the appellant and Adrian Johnson and was present when pictures were taken of them. He stated that in his examination of the appellant he found "on the underneath side of his penis near the head * * * what appeared to be an abrasion or a bruise which was close to the head of the penis" and on the body of Adrian Johnson he found "a bruise on the underneath side of his penis." The photographs were introduced in evidence by the State.

Dr. Joseph A. Jachimczyk, Harris County Forensic pathol-

ogist, testified that on the morning of July 21 he went to the scene of the crime where he observed the body of the deceased inside the refrigerator and that he later performed an autopsy upon the body. Dr. Jachimczyk testified that his external examination of the body disclosed various bruises, cuts and scratches including two bruises on each side of the neck which were compatible to a person being choked. He further testified that his internal examination of the body revealed a tear in the left leaf of the diaphragm with a rupture in the fundus, or the top side of the stomach, which was compatible to a person's body being crushed in a "bear hug." He further stated that his examination revealed tears and over-stretching of the rectum and that smears taken from the rectum, upon being examined, indicated that they contained sperm heads. He further stated that the injuries found in the anal orifice of the deceased were such that could have been caused by a male erected penis and that the injuries and bruises on the penis of appellant and Adrian Johnson were such that would have been caused by the insertion of a male penis in an erected state into a tight orifice. Dr. Jachimczyk testified that in his opinion the cause of death of the deceased was "asphyxia due to pressure on the neck, and on the left chest" in association with the act of sodomy. He further expressed the opinion that the deceased was dead or near death when placed in the refrigerator and that the injuries would have caused his death irrespective of whether he had been placed in the refrigerator.

Testifying in his own behalf, appellant denied molesting the deceased and being present when he was killed. In his testimony, appellant repudiated his written statement made to Officer Clark and swore that it was not true. Appellant testified that, while he was being interrogated, the officers slapped, struck, kicked and beat him, held a gun to his head, made him stand against the wall with his hands outstretched, and that the reason he signed the confession was because of what the officers had done to him and to keep them from beating him.

Appellant also called witnesses who testified in support of his defense of alibi.

The state called in rebuttal Officer Clark and the other officers named by appellant to have mistreated him who categorically denied the acts of brutality which appellant testified they committed upon him before he signed the written statement introduced in evidence.

In addition to the officers, the state called a newspaper reporter who testified that he was present at the police station during a part of the time appellant was being questioned and that he did not see any of the officers abuse or mistreat him in any manner. A television news cameraman was also called who stated that he saw appellant around 7:30 or 8:00 on the morning of July 22, 1959, and did not observe any bruises or skinned places on or about him. He further testified that at such time he asked appellant if he had been in any way mistreated and he answered "No".

The court submitted to the jury the issue as to the voluntary nature of appellant's written confession and instructed the jury that if they believed from the evidence, or had a reasonable doubt, that appellant made the statement through fear, or because he was beaten, or because of duress, coercion or any promise, then they would not consider said statement for any purpose. Appellant's defense of alibi was also submitted to the jury.

In submitting the issue of appellant's guilt to the jury, the court authorized the jury to find appellant guilty of murder with malice if they found from the evidence beyond a reasonable doubt that appellant either acting alone or as a principal killed the deceased as alleged in the indictment by: (1), choking or strangling him with his hands, or (2), smothering or suffocating him by placing his arms, hands, and fingers over his nose and mouth, or (3), smothering or suffocating him by squeezing or pressing his chest with his arms or hands, or (4), smothering or suffocating him by placing him inside a refrigerator and closing the door of said refrigerator and thereby sealing him inside of said refrigerator. In addition thereto, the court instructed the jury with reference to the provisions of Art. 42, V.A.P.C., and authorized the jury to find the appellant guilty if they found beyond a reasonable doubt that he, either acting alone or as a principal, did kill the deceased "in some way or manner or by some means, instruments or weapons to the Grand Jury unknown, through a mistake or accident while intending to commit the offense of sodomy, or while in the act of preparing for or executing the offense of sodomy."

The charge, to which no objections were made, clearly and fairly submitted the issue of appellant's guilt to the jury and we find the evidence sufficient to sustain their verdict.

Appellant insists that his conviction should be reversed for two reasons:

First, he contends that his arrest without a warrant was illegal.

Second, he contends that, in addition to his illegal arrest, his confession was not freely and voluntarily made and was therefore obtained in violation of the due process clause of the 14th Amendment of the Constitution of the United States and of Art. 727a of the Code of Criminal Procedure of the State of Texas. The contention is further made that the confession was, as a matter of law, void because it is shown that he was not taken before a magistrate by the officer making the arrest as required by Art. 217, V.A.C.C.P.

The evidence, as heretofore stated, shows that appellant was arrested at his home on July 21 at 11:15 p.m. and thereupon taken to the police station. After being questioned for some 15 minutes, he was placed in jail at 11:45 p.m. Later, between 2 and 3 a.m., he was brought from his jail cell to the robbery division office in the police station and further questioned for 20 or 30 minutes. He was then returned to his jail cell and later brought back to the office at 6:30 a.m., where, after further questioning, he made and signed the written statement on July 22 at 7:25 a.m.

The evidence shows no undisputed facts which, as a matter of law, would render the confession inadmissible.

The failure of the arresting officer to carry the appellant forthwith before a magistrate as required by Art. 217, supra, did not in itself vitiate the confession. Dimery v. State, 156 Tex. Cr. R. 197, 240 S.W. 2d 293; Golemon v. State, 157 Tex. Cr. R. 534, 247 S.W. 2d 119, certiorari denied, 344 U. S. 847, 73 S. Ct. 60, 97 L. ed. 659; Henson v. State, 159 Tex. Cr. R. 647, 266 S.W. 2d 864; Walker v. State, 162 Tex. Cr. R. 408, 286 S.W. 2d 144, certiorari denied, 350 U.S. 931, 76 S. Ct. 299, 100 L. ed. 814; and Williams v. State, 166 Tex. Cr. R. 368, 314 S.W. 2d 308. It is the rule that the failure to carry an accused before a magistrate vitiates the confession only when there is some causal connection between such failure and the making of the confession. Walker v. State, supra. There is no showing in the instant case of any causal connection between the failure to take appellant before a magistrate and the making of his confession.

We need not pass upon the legality of appellant's arrest as it is the illegal detention and not an illegal arrest which, under certain circumstances, will vitiate a confession. Head v. State, 160 Tex. Cr. R. 42, 267 S.W. 2d 419 and Walker v. State, supra. We are unable to say that appellant's detention for approximately seven hours under the circumstances shown was such as to vitiate his confession.

The dispute issue as to the voluntary nature of the confession was submitted to the jury and, under the record, we would not be authorized to disturb their verdict.

The case of Payne v. State of Arkansas, 356 U. S. 560, 78 S. Ct. 844, 2 L. ed. 2d 975, cited by appellant, is not, under the facts, here controlling because in that case the confession was obtained after the accused had been held incommunicado for three days and among other things was admittedly threatened with mob violence by the officer to whom the confession was made. No such facts are shown in the instant case.

The judgment is affirmed.

Opinion approved by the Court.