Gerald Vernon WESTBROOK, Appellant,

v.

The STATE of Texas, Appellee.

No. 36004.

Court of Criminal Appeals of Texas.

Nov. 20, 1963.

Warren McKenney, Austin, for appellant.

Leon B. Douglas, State's Atty., of Austin, for the State.

WOODLEY, Presiding Judge.

The offense is burglary; the punishment, enhanced under Art. 62 P.C., 12 years.

The indictment alleged the burglary of a building owned by Joe Teague with the intent to steal.

The prior conviction for burglary was proved as alleged.

Sufficient evidence was introduced to show that a building occupied and controlled by Central Texas Equipment Company, owned by Joe Teague and H. C. Bell, Jr., was broken into on the night of November 7, 1962, entry into the building having been made by breaking the glass and crawling through a window.

The office safe was damaged beyond repair by the use of a cutting torch that was moved from the shop part of the building to the office and a sledge hammer.

The contents of the safe were set afire by the torch and a fire extinguisher was emptied.

The room was filled with smoke when the owners arrived the next morning. They found the fire still burning and called the police and the fire department.

Business records were destroyed and there was damage to the building, but no property was removed.

Footprints of a crepe-type shoe sole were found near the safe.

The appellant was wearing such a shoe when he was questioned but there was no evidence identifying the track as having been made by his shoes.

The state relied upon appellant's written statement to identify and connect him with the burglary. The question presented on this appeal is the admissibility of the statement as a voluntary confession.

The statement introduced in evidence reads, in part: "I went to the back side of the lot and crawled over the fence to the equipment yard and then went to a window which is on the west side of the building. I had a flashlight with me so I used it to break the glass from the window and

then reached inside and released the latch to the window and crawled inside. I then went to the office portion of the building and looked through the desk and some files and I then looked for the company safe which I found in the closet beside the office. I pulled it out of the closet into the outer office where I made an attempt to get in. I used some of the tools which I found on the inside. When I was unable to get in I went into the shop part of the building and found a cutting torch equipment. This was on a dolly so I pushed it into the office and used it to cut the hinges off the safe and I then cut a hole in the botton of the safe. After I got the botton plate off I used a sledge hammer to break out the file clay and I then found it had a enter steel place which I used the torch to cut. When I got this hole cut it began to burn inside of the safe so I went for a fire extingusher which I found in the back of the office and tried to put the fire out. * * *"

"The office became full of smoke so it was hard for me to stay on the inside so I then left the building by the front door which I opened from the inside and went back to my car without taking anything from the building. No one gave me permission to enter this building and I knew no one who worked at this place nor had I ever been inside of this building before."

Upon the trial appellant repudiated his confession; he testified that he did not make the above quoted statements and that he signed the confession because he was "scared and afraid for my life * * *. It was either sign it or get my head beat off. If I didn't sign it, I was going to get it beat off anyhow, so what's the difference * * * because I didn't think there was any sense in me getting my head beat off for nothing."

The appellant testified that he cried because the officers struck him on the head with a newspaper and he wanted to get out and go home; that he was not allowed to use the telephone until after he had signed the confession and that he was under illegal arrest.

According to appellant's testimony at the trial he did not go into the building but was at the filling station until he went home and remained there on the night in question. Also, according to his testimony at the trial, the statement he signed because he was in fear which was read to him had nothing in it about the burglary and did not "talk about Central Texas Equipment Company and about it having been broken into" by him.

Sergeant Bert Bowman, of the Austin Police Department, who made the investigation and to whom the confession was made, denied that any coercion was used or that appellant was struck. According to his testimony the confession as introduced was voluntarily made.

Mrs. McElroy, who signed the confession as a witness, testified that the appellant was looking at the statement as it was read to him and that he appeared to be calm and not in fear. She denied any mistreatment or coercion while she was present.

The court in his charge instructed the jury that before they could consider the purported statement of the appellant they must first believe from the evidence beyond a reasonable doubt that the same was voluntarily and freely made, and the jury was instructed to acquit if they believed or had reasonable doubt that the statement was made as a result of persuasion, coercion, compulsion or force, either physical or mental, or by promise made to the appellant.

The court also instructed the jury to acquit if the evidence raised in their minds a reasonable doubt as to the presence of the appellant at the place where the offense was committed.

The jury resolved the issues raised against the appellant and the evidence sustains their verdict finding the appellant guilty as charged and that he was previously convicted as charged. Estes v. State, 160 Tex.Cr.R. 632, 274 S.W.2d 411.

Appellant's able court appointed counsel argues that appellant's confession was not admissible because the appellant was not taken before a magistrate prior to the making of the confession. He argues that the cumulative effect of this and the other evidence relating to the taking of the confession requires the conclusion that the confession was not voluntarily made.

Dimery v. State, 156 Tex.Cr.R. 197, 240 S.W.2d 293, and Smith v. State, 171 Tex. Cr.R. 313, 350 S.W.2d 344, are authority for overruling such contention.

The judgment is affirmed.