Joe Edward SMITH, Appellant,

v.

The STATE OF TEXAS, Appellee.

No. 22130.

United States Court of Appeals
Fifth Circuit.

June 10, 1968.

James J. Hippard, Houston, Tex., for appellant.

Samuel Robertson, Jr., Houston, Tex., for appellee.

Before WISDOM and GEWIN, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge:

This appeal is from a judgment denying the appellant's petition for writ of habeas corpus attacking the validity of his state court conviction on the ground that there had been no determination of the voluntariness of his confession in the manner required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964).

The appellant was convicted of murder with malice aforethought and assessed the death penalty in a trial in a Criminal District Court of Harris County, Texas in April, 1960. The conviction was upheld on direct appeal. Smith v. State, 171 Tex.Cr.R. 313, 350 S.W.2d 344, cert. den. 368 U.S. 883, 82 S.Ct. 126, 7 L.Ed.2d 83 (1961). The usual course of piecemeal, post-conviction, collateral litigation of issues that followed now has the question of the validity of this conviction before this Court for the third time. The appellant here has suffered adverse decisions on his claims that his confession was involuntary as a matter of law (Smith v. Heard, S.D.Tex., 214 F.Supp. 909 (1962), affirmed, 5 Cir., 315 F.2d 692, cert. den. 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed.2d 113), and that the prosecution failed to offer evidence meeting the requirements of Thompson v. City of

Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, and Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed. 2d 207 (Smith v. State of Texas, S.D.Tex. 225 F.Supp. 150 (1963), affirmed, 5 Cir., 329 F.2d 498). He has been blessed from the beginning with able counsel, experienced in trials of criminal cases, who have advocated his claims aggressively all the way. It finally appeared for a short time, however, that the opinion of this Court in 329 F.2d 498, above referred to, had put an end to the appellant's post-conviction litigation, for in a motion filed for a second stay of mandate on that appeal, he said:

"On 20 May 1964 this Court issued a stay of mandate in the above cause (in which the Court affirmed the District Court's denial of appellant's application for writ of habeas corpus) to enable appellant to apply for a writ of certiorari from the Supreme Court of the United States. An intensive reexamination of the law in light of the Court's opinion has convinced counsel for appellant of the futility of such application and so none has been made."

Jackson v. Denno, decided by the Supreme Court shortly before the filing of such second motion for stay of mandate, dispelled his feeling of futility and brought about the filing of the application for writ of habeas corpus which is now before this Court.

In this case, as in Jackson v. Denno, a heinous crime was committed, and the issue of the voluntariness of the confession was raised primarily by the testimony of the accused himself.

The facts of the brutal murder for which appellant was convicted and the circumstances of the making of the confession appear fully in the opinions above stated. The appendix to Judge Noel's opinion, 225 F.Supp. 150, at 155, et seq., contains an admittedly correct detailed account of the crime. Only a brief factual summary is therefore required here.

Mrs. Bodenheimer, obviously acting under the impression that an innocent child ought to be safe on the public streets of a city that claimed to be civilized, permitted her little twelve year old boy to go for a swim on a July afternoon in 1959. He was to travel on his bicycle from his home to the pool and back. The entire route was within the city limits of Houston, Texas. The little boy lost his life under the most merciless circumstances at the hands of the appellant and four confederates on his way back home that afternoon. The murder was perpetrated in a small unoccupied metal shack located on an otherwise vacant lot in Houston. The tract was known as "the dirt yard lot" because it had formerly served as a place to pile dirt to be sold for use around residences. The appellant and his gang knocked the Bodenheimer boy off his bicycle as he was riding along the street in the area of some unoccupied lots, and forcibly dragged him into the metal shack. When they got him inside, they stripped off all his clothes and each one of the gang committed anal sodomy upon him. One or two members of the group would hold him while another one was engaged in the act of sodomy. That process was repeated until each one of the five assailants had taken his turn. The child's resistance and screams were suppressed by constant choking of him. When the gang had finished with the boy, they stuffed his limp body into an unused ice box in the shack, closed the box and left. An all night search finally led to the discovery of the nude, lifeless body in a sitting and cramped position in a pool of blood in the box. His clothes were still on the floor of the shack and his bicycle was just outside. Injuries apparent on his neck and the upper portion of his body indicated that he had been severely choked and that his left chest had been crushed. The pathologist found that death was due to asphyxiation from suffocation "due to pressure on the neck, and on the left chest."

A gang of young Negroes, ranging from juvenile age to twenty-two years had been robbing newsboys at the point of a knife over an area in Houston that

included the place where the boy was murdered. The appellant and two of his confederates were arrested and jailed in connection with some of those robberies. One of them other than the appellant readily confessed, and, in so doing, also told about killing the Bodenheimer boy. The officers had not associated them with that homicide until that time. In a short time, all of the participants made written statements to Negro detectives of the City of Houston confessing to the murder. The appellant's confession showed that he took a leading part in it.

The appellant contended that his confession was obtained as the result of threats and severe beatings. His claims were refuted by the testimony of ten witnesses, by photographs of him taken within a short time after the confession, and by the circumstances. All interviews of him by the officers were conducted in a room at the police station with the door to the hall open. Several representatives of the news media were in the hall in the area of the door at all times. One of the newsmen was in and out of the room during the interrogation. The other two, who were television cameramen, took pictures of appellant an hour or so after the confession. All three of them said they neither saw nor heard any indication of abuse. The television film which was offered in evidence was taken within about an hour after the confession was made. It showed no evidence of the swelled and lacerated lip the appellant claimed he had as a result of being struck in the face during the interrogation. All of the officers involved denied any mistreatment of the appellant. The confession was strongly corroborated. Smith v. State of Texas, 329 F.2d 498.

The evidence on the issue of voluntariness of the confession was heard in the presence of the jury. The only action taken by the Court in regard to it was to overrule without comment the objection made to its admission on the ground that it was involuntary. The question of voluntariness was submitted to the jury under a charge about which no question has ever been raised.

The confession has been heretofore upheld against claims of involuntariness as a matter of law by the Court of Criminal Appeals of Texas, by the United States District Court for the Southern District of Texas, and by this Court, but Jackson v. Denno now raises a new question.

Jackson v. Denno involved an attack upon a conviction in a New York state court where the judge was required to submit the question of voluntariness of a confession to the jury if there was a factual conflict on the issue over which reasonable men could differ. The Supreme Court of the United States held in that case that such procedure was unconstitutional because it called upon the same trier of facts to determine the questions of voluntariness *and* of reliability.[1] Its opinion says that in a trial of a criminal case before a jury the defendant is entitled to have the judge make a "reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." 378 U.S., at 391, 84 S.Ct., at 1788, 12 L.Ed.2d, at 924.

On the same day as the decision in Jackson v. Denno, the Supreme Court, in memorandum opinions in Lopez v. Texas, 378 U.S. 567, 84 S.Ct. 1924, 12 L.Ed.2d 1038, and Harris v. Texas, 378 U.S. 572, 84 S.Ct. 1930, 12 L.Ed.2d 1040, held that the procedure followed in those cases had the same vice as the condemned New York practice.

1. The following language in Sims v. State of Georgia, 385 U.S. 538, 543, 87 S.Ct. 639, 17 L.Ed.2d 593, 598, summarizes the constitutional rule established by Jackson v. Denno:

"* * * A constitutional rule was laid down in that case that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make the primary determination of voluntariness. * * *"

The evidentiary hearing on the present petition for writ of habeas corpus was held at a time when the able trial judge did not have the advantage of the cases construing Jackson v. Denno which dictate our present decision here. He recognized the applicability of the Jackson v. Denno rule, but concluded that it had been met in this case. Smith v. State of Texas, 236 F.Supp. 857. The transcript of the record of the murder trial offered in the habeas corpus hearing failed to show any ruling by the trial judge on the factual issue of the voluntariness of the confession. The State of Texas attempted to defeat the Jackson v. Denno attack upon the conviction by offering evidence to the effect that the trial judge in the murder case did actually make a separate and independent determination in his own mind that the appellant's confession was voluntary, even though he did not announce it. That judge testified orally on the hearing that while his practice had been to make no announcement of his decision on the issue of voluntariness of a defendant's statement, he had always in fact made one in his own mind; that it was a matter of conscience with him not to submit a confession to the jury which he had decided by such process was involuntary; that he "would say" that he decided in his own mind that the appellant's confession was voluntary, otherwise he would not have let it go before the jury. We feel that in view of Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), this evidence falls short of showing the "reliable and clear cut determination" of the issue of voluntariness required by Jackson v. Denno. It

is said in the *Sims* case, 385 U.S., at 544, 87 S.Ct., at 643, 17 L.Ed.2d, at 598: " * * * Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. Here there has been absolutely no ruling on that issue, and it is therefore impossible to know whether the judge thought the confession voluntary or if the jury considered it as such in its determination of guilt. * * * " The undisclosed determination by the judge in his "own mind" that the confession was voluntary does not satisfy this requirement that the record show "with unmistakable clarity" that he actually made a *ruling* on the issue of voluntariness.[2]

The fact that Jackson v. Denno was decided long after the Supreme Court denied certiorari on the original appeal from the appellant's murder conviction in this case requires us to consider whether the constitutional rule announced therein was intended to be applied retroactively. The majority opinion in Jackson v. Denno did not mention that question; but subsequent decisions by the Supreme Court have made it clear that the rule is retroactive in application.

In each one of the recent landmark cases on retroactivity of new constitutional principles in criminal cases, the Supreme Court has referred to Jackson v. Denno as being one of the cases where the rule was to be retroactively applied. Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 609 (1965), cited Jackson v. Denno in support of the statement that, " * * * It is true that heretofore without dis-

2. The "record" referred to in this connection is not necessarily confined to the transcript of the trial on its merits. It means the record before the court called upon to determine whether the requirements of Jackson v. Denno were met. That may consist of the trial transcript alone, or of such transcript and extrinsic evidence offered by either or both of the parties to show the truth. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.

2d 770 (1963); Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408, 415 (1965). Such extrinsic evidence would be limited to showing whether a ruling on the issue of voluntariness was actually made in a way that established with unmistakable clarity that the judge actually decided that the confession was voluntary, and to showing why the trial transcript was incorrect or incomplete on that matter, if it was.

cussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule. * * *" Tehan v. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, 460 (1965), after stating that denial of counsel or of an appeal to an indigent is calculated "to infect a criminal proceeding with the clear danger of convicting the innocent", says, "The same can surely be said of the wrongful use of a coerced confession. See Jackson v. Denno * * *" Johnson v. State of New Jersey, 384 U.S. 719, 727, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882, 889 (1966), says:

"As Linkletter and Tehan acknowledged, however, we have given retroactive effect to other constitutional rules of criminal procedure laid down in recent years, where different guarantees were involved. For example, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963), which concerned the right of an indigent to the advice of counsel at trial, we reviewed a denial of habeas corpus. Similarly, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R. 3d 1205 (1964), which involved the right of an accused to effective exclusion of an involuntary confession from trial, was itself a collateral attack. In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' Linkletter v. Walker, 381 U.S., at 639, 85

S.Ct., at 1743, 14 L.Ed.2d, at 614; Tehan v. Shott, 382 U.S., at 416, 86 S. Ct., at 465, 16 L.Ed.2d, at 460."

"Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree. We gave retroactive effect to Jackson v. Denno, supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature. * * *"

Johnson v. State of New Jersey mentions that Jackson v. Denno was itself a post-conviction case. Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964), also applied the rule in a collateral attack on a state court conviction.[3]

Mitchell v. Stephens, 8 Cir., 353 F.2d 129, 144 (1965), and State of Minnesota ex rel. Bassett v. Tahash, 8 Cir., 364 F.2d 922 (1966), are court of appeals cases which hold that the Jackson v. Denno constitutional rule is to be retroactively applied. Additional cases by courts other than the Supreme Court and the courts of appeals on the retroactive application of the rule appear in the annotations in 1 A.L.R.2d 1251 and 14 L.Ed.2d 992.

Some confusion has arisen from the reference in the concluding portion of Jackson v. Denno to "cases to be tried hereafter",[4] 378 U.S., at 395, 84 S.Ct., at

---

3. We realize that a post-conviction case announcing new constitutional doctrines does not "foreclose consideration of the retroactivity issue." See dissenting opinion of Mr. Justice Harlan in Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41, 42 (1963), and Annotation—Retroactive or Merely Prospective Operation of New Rule Adopted by Court in Overruling Precedent—Federal Cases, 14 L.Ed.2d 992, 998, et seq. In that annotation, the editor, on pp. 999–1000 gives some of the reasons why the Supreme Court might desire to use a post-conviction proceeding as a vehicle for announc-

ing a new constitutional principle, and yet not intend for it thereafter to be applied retroactively. He then proceeds to say at p. 1000:
    "* * * Thus, even if an earlier decision is overruled in a habeas corpus case and the new rule is applied to the parties to the overruling case, it does not necessarily follow that the new rule must be given general retroactive effect in all habeas corpus proceedings which subsequently come before the Court."

4. The context in which this language must be considered appears in the following

1791, 12 L.Ed.2d, at 926. A few cases have taken that language to mean that the rule is only prospective in application. United States v. Clifton, D.C.Colo., 239 F.Supp. 49 (1965); United States ex rel. Conroy v. Pate, D.C.Ill., 240 F.Supp. 237 (1965); People v. Hovanian, 22 A.D.2d 686, 253 N.Y.S.2d 241 (1964), expressly overruled in People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). That language, however, was not directed to the question now under consideration here. The Court decided two questions in Jackson v. Denno: (1) whether the questions of voluntariness and of reliability of a confession could be decided by the same trier of facts; and, if not, (2) whether the issue of voluntariness had to be decided by the judge before the jury heard evidence about the confession. The first was a constitutional question, while the second was not. Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967). The Court was saying in ef-

fect that while it would be the practical and desirable procedure in future cases for the judge to decide the question of voluntariness before permitting the confession to go before the jury, it was going to permit a post-conviction hearing to be held in cases already final at that time to give the judge an opportunity to decide that issue, even though the jury had already heard the confession and determined the guilt of the accused. This construction of the language in question is consistent with the views of Mr. Justice Black and Mr. Justice Harlan that there is nothing in the opinion of the Court to indicate that the constitutional rule is to be applied only prospectively.[5]

■ We are convinced that the appellant must be given a hearing of the type described in Jackson v. Denno for the purpose of a determination by a judge of the voluntariness of the confession here involved.[6] The initial deter-

quotation of the final paragraph of the Court's opinion, 378 U.S., at 395, 84 S.Ct., at 1790, 12 L.Ed.2d, at 926:

"Obviously, the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interest of sound judicial administration and the proper relationship between federal and state courts. We cannot assume that New York will not now afford Jackson a hearing that is consistent with the requirements of due process. Indeed, New York thought it was affording Jackson such a hearing, and not without support in the decisions of this Court, when it submitted the issue of voluntariness to the same jury that adjudicated guilt. It is both practical and desirable that *in cases to be tried hereafter* a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence. But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary. Accordingly, the judgment denying petitioner's writ of habeas cor-

pus is reversed and the case is remanded to the District Court to allow the State a reasonable time to afford Jackson a hearing or a new trial, failing which Jackson is entitled to his release." (Emphasis added)

5. Mr. Justice Harlan said:
"* * * I find nothing in its opinion to suggest that its holding will not be applied retroactively. * * *"
378 U.S., at 439, 84 S.Ct., at 1813, 12 L.Ed.2d, at 952.

Mr. Justice Black said:
"* * * Certainly if having the voluntariness of their confessions passed on only by a jury is a violation of the Fourteenth Amendment, as the Court says it is, then not only Jackson but all other state and federal prisoners already convicted under this procedure are, under our holding in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, entitled to release unless the States and Federal Government are still willing and able to prosecute and convict them. * * *"
378 U.S., at 406, 84 S.Ct., at 1796, 12 L.Ed.2d, at 933.

6. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), the first case by the Court of Appeals of New York decided after Jackson v. Denno was returned to the trial court in that State

mination of that issue should be made in an adequate evidentiary hearing in the state court where appellant was convicted by the judge who presided at the trial of his murder case, if possible. If that judge is not available, then the determination should be made by some other judge who is qualified to sit in that court. The judge may consider the transcript of the trial of the murder case and such extrinsic evidence as may be offered by either party on the issue of voluntariness. When he announces his decision, he should have in mind the requirement of Jackson v. Denno, heretofore referred to, that he make "a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which [the] voluntariness [issue] may depend." This language makes an opinion or formal findings of fact extremely valuable, even though they are not mandatory. If the judge should decide from the evidence beyond a reasonable doubt in a "soundly conducted" post-conviction proceeding that the confession which was admitted at the trial of the murder case was voluntarily given by the appellant, then appellant should be denied a new trial. If he should not so find, he should set aside appellant's conviction and grant a new trial.

The state court is not to be misled by the dispositions made in Lopez v. State, Tex.Cr.App., 384 S.W.2d 345 (1964), and

Harris v. State, Tex.Cr.App., 384 S.W.2d 349 (1964). When those cases were remanded by the Supreme Court to the Court of Criminal Appeals of Texas for Jackson v. Denno hearings, the Court of Criminal Appeals held that a new trial had to be granted in each of them because Texas then had no procedure for an evidentiary hearing after conviction. Since that time, Texas has adopted a Revised Code of Criminal Procedure which makes adequate provision for evidentiary post-conviction hearings. Ex parte Young, Tex.Cr.App., 418 S.W.2d 824 (1967); Carroll v. Beto, D.C.Tex., 270 F.Supp. 812, affirmed 5 Cir., 379 F.2d 329 (1967); State of Texas v. Payton, 5 Cir., 390 F.2d 261, (1968). The Jackson v. Denno type post-conviction hearing required in this case can now be held in the Texas courts. The recent case of Williams v. Beto, 5 Cir., 386 F.2d 16 (1968) expressly so holds.[7]

In accordance with the procedure set out in Jackson v. Denno the judgment denying appellant's application for writ of habeas corpus is reversed, and the case is remanded to allow the State of Texas a reasonable time to give the appellant Smith a proper hearing on the issue of the voluntariness of his confession or a new trial. In the event he does not get such hearing within a reasonable time, he will be entitled to his release.

Reversed.

for a hearing on the issue of the voluntariness of the confession, laid down general guidelines for that type of hearing which have been widely accepted. In that connection, the Court said as to trials already concluded:

"(b) As to the type of hearing to be had, there is no constitutional impediment to using the prior record provided that the defendant and the People are permitted to put in additional proof if either side so desires. Where possible, the new hearing will be held before the Judge who previously presided at the voir dire, if any, or the trial proper. The defendant should be provided counsel if he so desires. The court, after holding the Jackson-Denno hearing, shall put into the record a decision contain-

ing specific findings of fact and conclusions of law. In these cases already concluded there is no need, since the jury has already passed on the matter, again to submit to the jury the question of voluntariness."

7. Williams v. Beto involved a question of the validity of a Jackson v. Denno hearing in a state court in Texas. Footnote 1 of Judge Wisdom's opinion in that case, 386 F.2d, at p. 16, says: "At the time this case was in the district court, Texas had no post-conviction remedy of a scope sufficient to permit the hearing held by the state court here. A recent amendment to the Code of Criminal Procedure has created such a remedy. Vernon's Ann. Texas Code Crim.Proc. § 11.07."